[Doc. No. 58]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

VINCE JACKSON,

             Plaintiff,

     v.

ERIC GANDY, et al.,

             Defendant.

Civil No. 09-1141 (RMB/AMD)

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court by way of motion [Doc. No. 58] for summary judgment filed by Defendants Gandy, Saduk, and Roman, (hereinafter referred to collectively as "Defendant Officers"), and Defendants George W. Hayman, Commissioner, N.J. Department of Corrections, Thomas Sullivan, Administrator Bayside State Prison, and Karen Balicki, Administrator. Plaintiff's complaint arises out of an alleged July 9, 2007 incident at Bayside State Prison (hereinafter referred to as "BSP") (Pl.'s Compl. [Doc. No. 1] ¶ ¶ 4, 5). Plaintiff alleges that Defendant Officers Gandy and Saduk assaulted Plaintiff while Plaintiff was in custody at BSP. Plaintiff alleges that Defendant Officer Roman and SCO John Doe conspired to assault Plaintiff and that Defendant Nurse Jane Doe failed to provide Plaintiff proper medical treatment. (Id. ¶

1

5.)  Plaintiff also alleges that Defendants Balicki, Sullivan, and Hayman failed to adequately train and supervise the officers and prison staff under their control, that this failure to train and supervise resulted in the assault, and that these Defendants were deliberately indifferent to his medical needs following the alleged assault. (Pl.'s Am. Compl. [Doc. No. 17] ¶ ¶ 2, 5.)  Plaintiff brings claims under 42 U.S.C. § 1983 for violations of his Eighth Amendment right against cruel and unusual punishment. Plaintiff additionally alleges violations of the New Jersey constitutional provision against cruel and unusual punishment. (Id. ¶ 2.)

Defendants have moved for summary judgment [Doc. No. 58] pursuant to Federal Rule of Civil Procedure 56 on a number of grounds.  Defendants assert that: (1)  Plaintiff's amended complaint against Defendants Balicki, Sullivan, and Hayman is barred by the statute of limitations; (2) Plaintiff's claims are barred because of Plaintiff's failure to exhaust his administrative remedies; (3) Plaintiff's claims against Defendants Balicki, Sullivan, and Hayman must be dismissed because they are solely based on an impermissible theory of respondeat superior; (4) Defendants are entitled to dismissal of Plaintiff's official capacity claims because such claims are barred by the Eleventh Amendment, and because Defendants in their official capacities are not persons amenable to suit under 42 U.S.C. § 1983; (5) Defendants are entitled to summary judgment as to Plaintiff's Eighth Amendment

claim that he was assaulted on July 9, 2007 because he was found guilty of assault through prison disciplinary proceedings; (6) Defendants are entitled to qualified immunity; and (7) Defendants are entitled to summary judgment with regard to Plaintiff's claims for punitive damages.

This Court has subject matter jurisdiction over the federal law claims under 28 U.S.C. §§ 1331 and 1343. The claims arising under the New Jersey constitutional provisions against cruel and unusual punishment are related to the federal claims and form part of the same case or controversy; therefore, the Court has supplemental jurisdiction over those claims. 28 U.S.C. § 1367. The parties consented to this Court's jurisdiction pursuant to 28 U.S.C. § 636(c)(1), FED. R. CIV. P. 73(b), and Rule 73.1 of the Local Civil Rules for the United States District Court, District of New Jersey.

Plaintiff named the Defendant Officers Gandy, Saduk, and Roman, as well as Defendant SCO John Doe and Defendant Nurse Jane Doe, in his initial complaint, and alleged that Defendant Officers Gandy and Saduk assaulted him while in the custody of BSP, that Defendant Officer Roman and SCO John Doe conspired to assault Plaintiff, and that Defendant Nurse Jane Doe failed to provide proper medical treatment. (Pl.'s Compl. 5, 7-8.) Specifically, Plaintiff asserts that on July 8, 2007, Defendant Officer Gandy took a television away from Plaintiff as punishment for not

returning his food tray in a timely fashion. (Id. at 7.) Plaintiff further asserts that on July 9, 2007, Plaintiff questioned Defendant Officer Gandy about the return of his television, and Defendant Officer Gandy dismissed Plaintiff's inquiry. (Id.) Plaintiff alleges that on or about 7:30 p.m. that night, Plaintiff was called out of his cell to the courtyard stairs of the F Unit at BSP by Defendant Officer Gandy. (Id.) Plaintiff asserts that he witnessed Defendant Officer Gandy throw the television down the stairs, and that when Plaintiff requested to speak to the supervising sergeant, he was denied permission by Defendant Officers Gandy and Saduk. (Id.) Plaintiff alleges that, at the time Plaintiff made this request, Defendant Officers Gandy and Saduk put on gloves, made racial comments, and threatened Plaintiff. (Id.) At this point, Plaintiff alleges he fled the area and attempted to hide under the day room staircase. (Id.) Plaintiff further alleges that he was then attacked by Defendant Officers Gandy and Saduk, who struck him in the head, face, and body, while Plaintiff screamed for help. (Id.) Plaintiff asserts that the alleged assault was witnessed by Defendant Officer Roman and another John Doe officer, and that those witnessing officers did not attempt to intervene. (Id. at 7-8). Plaintiff asserts that he was then transported to the medical unit where Defendant Nurse Jane Doe allegedly refused to treat his medical injuries. (Id. at 8.) Plaintiff then claims that at or around 10:00 p.m. on July 9,

4

2007, Plaintiff was transported to South Woods State Prison (hereinafter, "SWSP"), where a nurse observed his injuries but allegedly denied him medical treatment. (Id.) Plaintiff was then placed in lockup at SWSP. (Id.) Plaintiff asserts that on the morning of July 10, 2007, Plaintiff was found unconscious on the floor of his cell, an ambulance was summoned, and he was transferred to South Jersey Regional Medical Center. (Id.) There, Plaintiff asserts he was examined by Dr. Curt W. Cackovic, and was diagnosed with trauma of the head, vision change, and bruises to the face. (Id.)

Plaintiff asserts that Defendant Officers Gandy and Saduk subsequently filed disciplinary charges against Plaintiff, which resulted in a sentence of 830 days in solitary confinement. (Id.) Plaintiff avers that "[a]ll remedies and grievances have been forward[ed] to the Administration and the Department of Correction[s]," and that no response was received. (Id.)

Plaintiff filed his amended complaint on January 25, 2010 and added claims against Defendants George W. Hayman, Commissioner, N.J. Department of Corrections, Thomas Sullivan, Administrator at BSP, and Karen Balicki, Administrator for failure to adequately train and supervise those under their control.

The following facts are not in dispute:[1]

---

1.   Pursuant to Local Civil Rule 56.1(a), a party moving for summary judgment must provide a statement setting forth "material facts as to which there does not exist a genuine issue[.]"

1.  On July 9, 2007, Defendants Gandy and Saduk conducted a count of the inmates on their assigned housing unit at Bayside State Prison. [citation omitted]

2.  Defendant Saduk called in an incorrect count for the number of inmates on his housing unit. [citation omitted]

. . .

11.  The struggle between Defendant Gandy and Plaintiff continued under a stairwell. [citation omitted]

. . .

22. [Registered Nurse Gottwald] also noted that Plaintiff had swelling to his right upper cheek and around the outside corner of his right eye, an abrasion to his right forehead, abrasions to all four knuckles of his right hand, redness to his right and left shoulders, swelling on his right eyelid and a scratch under his left eye. [citation omitted]

. . .

25.  On July 9, 2007, Plaintiff was issued a disciplinary charge for *.002, assaulting any person, *.306, conduct which disrupts or interferes with the security or orderly running of the correctional facility, and .502, interfering with the taking of count. [citation omitted]

---

L. Cɪᴠ. R. 56.1(a).  The opponent of summary judgment "shall furnish, with its opposition papers, a responsive statement of material facts, addressing each paragraph of the movant's statement, indicating agreement or disagreement and, if not agreed, stating each material fact in dispute and citing to the affidavits and other documents submitted in connection with the motion[.]"  Id.  "[A]ny material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion." Id.  The opponent "may also furnish a supplemental statement of disputed material facts . . . if necessary to substantiate the factual basis for opposition." Id.  In this case, Plaintiff admitted to paragraphs 1, 2, 11, 22, 25, 26, 27, 28, 29, 31, 32, 33, 39, 40, 41, 42, 44, 45, 46, 49, 53, 54, 55, 56, 57, 62, 63, 64, 65, 66, 67, and 68 of Defendants' Statement of Material Facts.  Plaintiff asserted that he lacked sufficient knowledge to admit or deny paragraphs 3, 4, 10, 14, 18, 20, 21, 23, 30, 34, 35, 47, 50, 52, 58, and 59.  Plaintiff denied the remaining paragraphs.  (Doc. No. 66.)

26.   After a disciplinary hearing, Plaintiff was found guilty of all three charges.  [citation omitted]

27.   The guilty finding was upheld on administrative appeal.  [citation omitted]

28.   Plaintiff did not appeal that final administrative decision to the court and those charges remain on Plaintiff's prison disciplinary record.  [citation omitted]

29.   On July 9, 2007, Plaintiff reported to Special Investigations Division ("SID") Senior Investigator Carol Steward that Defendants Gandy and Saduk assaulted him and he attempted to hid[e] under the stairwell.  [citation omitted]

. . .

31.  Plaintiff provided a written statement regarding the alleged assault to Investigator Steward.  [citation omitted]

32.   In his written statement, Plaintiff alleged he was assaulted by Defendants Gandy and Saduk, and that Officer McAllurenta was present during the assault.  [citation omitted]

33.   Plaintiff [ ] did not include in his written statement that Defendant Roman was also involved in the alleged July 9, 2007 assault.  [citation omitted]

. . .

39.  Defendants Gandy, Saduk and Roman all testified that Defendant Roman had no involvement in the July 9, 2007 incident with Plaintiff.  [citation omitted]

. . .

41.  Plaintiff was unable to pick Defendant Roman out of a photo array.  [citation omitted]

42.   Plaintiff was moved to South Woods State Prison ("SWSP") on July 9, 2007.  [citation omitted]

. . .

44.  SWSP and EJSP both provided a grievance procedure to inmates in their institutions and that grievance procedure was set forth in the Inmate Handbooks of each institution. [citation omitted]

45.  In 2007, the SWSP procedure for filing grievances was available to all inmates through the Inmate Handbook. [citation omitted]

46.  The grievance procedure is a mechanism designed to provide a direct and confidential route for inmates to make the Administration aware of any problems and concerns and to allow the Administration to remedy any problems in a timely and efficient manner. [citations omitted]

. . .

49.  If an inmate was unable to access the appropriate Drop Box, an assigned Social Worker or unit housing officer would deposit the Form in the appropriate box. [citation omitted]

. . .

53.  Once an inmate received the response to his administrative appeal his administrative remedies were exhausted. [citation omitted]

(Defs.' Statement of Material Facts [Doc. No. 58-6] ("hereinafter Defs.' Facts"); Pl.'s Response to Statement of Material Facts [Doc. No. 66] (hereinafter Pl.'s Facts").)

On August 15, 2007, Plaintiff filed a remedy form while at SWSP requesting a polygraph test in conjunction with the disciplinary hearing resulting from the July 9, 2007 incident. (Declaration of Susan Scott [Doc. No. 58-2] Ex. B.)  The request was denied and there is no evidence that Plaintiff appealed the denial.  (Id.)

The following facts are also undisputed:

54. EJSP also had an Inmate Handbook in place in accordance with N.J.A.C. 10A:8-1.1 to -3.6, which set forth the rights and privileges of inmates. [citation omitted]

55. The EJSP Inmate Handbook sets forth an administrative grievance procedure which is designed to provide a direct and confidential route for inmates to make the administration aware of any problems and concerns and to allow the administration to remedy any problems in a timely and efficient manner. [citation omitted]

56. Pursuant to the EJSP Handbook, the inmate is to complete an Inmate Request System and Remedy Form and place it in the correctional facility box marked "INMATE REQUEST SYSTEM AND REMEDY FORMS ONLY." [citation omitted]

57. The completed forms are then picked up from the box daily, with the exception of weekends, holidays, and during emergencies, and a response [is] provided. [citation omitted]

. . .

62. Plaintiff submitted EJSP remedy forms with regard to issues, such as: access to the law library, medical treatment unrelated to the incident at issue in this Complaint, classification inquiries, restoration of commutation credit that he lost as a result of this incident, a newspaper subscription, requesting an inmate account statement, and his work pay. . . . None of the grievance forms submitted by Plaintiff at EJSP pertain to any of the allegations raised in his Complaint. [citation omitted]

(Defs.' Statement of Material Facts [Doc. No. 58-6]("hereinafter Defs.' Facts"); Pl.'s Response to Statement of Material Facts [Doc. No. 66] (hereinafter "Pl.'s Facts").)

At some point prior to the filing of the complaint, Plaintiff was

transferred to East Jersey State Prison (hereinafter, "EJSP").

(Defs.' Facts ¶ 62.)

A court may grant summary judgment "'if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)).   A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).   A fact is "material" if it "might affect the outcome of the suit under the governing law."  Id.   "Factual disputes that are irrelevant or unnecessary will not be counted."  Id.

      The moving party bears the initial burden of "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp., 477 U.S. at 323. Once a moving party satisfies its burden, the party opposing summary judgment must then "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 248 (quoting Fed. R. Civ. P. 56(e)).   A non-moving party must present more than "'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." McCabe v. Ernst & Young, LLP., 494 F.3d 418, 436-37 (3d Cir. 2007)(quoting Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005)); see also

Anderson, 477 U.S. at 249-50.  The Court must view the evidence in a light most favorable to the non-moving party and any "justifiable inferences" shall be extended to the non-moving party.  Anderson, 477 U.S. at 255.

The Eleventh Amendment bars suits by individuals against states or their agencies unless immunity has been waived.  See Pennsylvania Fed'n of Sportsmen's Club, Inc. v. Hess, 297 F.3d 310, 323-24 (3d Cir. 2002).  Sovereign immunity "also bars a suit against a state official in his or her official capacity because it 'is not a suit against the official but rather is a suit against the official's office.'"  Garden State Elec. Inspection Servs., Inc. v. Levin, 144 F. App'x 247, 251 (3d Cir. 2005) (quoting Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989)).  Therefore, "[a]s a matter of law, suits against individuals acting in their official capacities are barred by the Eleventh Amendment."  Smith v. Hayman, No. 09-2602, 2012 WL 1079634, at *22 (D.N.J. Mar. 20, 2012)(quoting Holland v. Taylor, 604 F. Supp. 2d 692, 699 (D. Del. 2009)).  The Eleventh Amendment does not, however, bar a suit against a state official acting in his or her individual capacity, even if the actions which are the subject of the suit were part of their official duties.  See Hafer v. Melo, 502 U.S. 21, 31 (1991).

Plaintiff has brought suit against Defendants in both their individual and official capacities. (Am. Compl. 2.) Defendants argue that Plaintiff's claims against Defendants in

11

their official capacities are barred by the Eleventh Amendment. (Br. in Supp. of Defs.' Mot. for Summ. J. Pursuant to FED. R. CIV. P. 56 [Doc. No. 58-1] (hereinafter, "Defs.' Br."), 25.) Plaintiff makes no argument for why Defendants are amenable to suit in their official capacity, and instead argues that the Eleventh Amendment does not bar Plaintiff from suing the officials in their individual capacities. (Pl.'s Letter Br. in Opp'n to Defs.' Mot. for Summ. J. [Doc. No. 64] (hereinafter, "Pl.'s Br."), 6.) Therefore, Plaintiff's claims against Defendants, in their official capacities, are dismissed. See Smith, 2012 WL 1079634, at *22 (dismissing claims against a prison administrator in her official capacity based on the fact that such suits are barred under the Eleventh Amendment); Lopez v. Corr. Med. Servs., No. 04-2155, 2009 WL 1883915, at *4 (D.N.J. June 30, 2009) (dismissing claims against defendants in their official capacity based on immunity under the Eleventh Amendment while addressing claims against defendants in their individual capacities on their merits).

Defendants additionally argue that Plaintiff added Defendants Balicki, Sullivan, and Hayman to the amended complaint in their individual capacity based on an impermissible theory of respondeat superior. Specifically, Defendants assert that "[s]upervisory liability under § 1983 cannot be predicated solely upon a theory of respondeat superior." (Defs.' Br. 22.) Defendants argue that supervisory liability can be found only if the

12

supervisor "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations" or the supervisor "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused the constitutional harm." (Id. at 23.) Defendants further argue that "a single incident of unconstitutional activity is not sufficient to constitute a policy or custom to impose liability." (Id.) Defendants then assert that Plaintiff has failed to allege that Balicki, Sullivan, or Hayman either participated in the alleged assault of Plaintiff or directed the alleged assault. (Id.) Defendants further assert that an alleged isolated incident is insufficient to establish the existence of a policy or custom established by the new defendants.  Based on these assertions, Defendants argue that the claims against Balicki, Sullivan, and Hayman should be dismissed.

In Argueta v. U.S. Immigration and Customs Enforcement ("ICE"), 643 F.3d 60 (3d Cir. 2011), the Third Circuit addressed the situations in which a court can find sufficient personal involvement of a supervisory defendant for liability under § 1983. First, "'personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.'" Id. at 72 (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)). Moreover, "[i]t is also possible to establish section 1983

13

supervisory liability by showing a supervisor tolerated past or ongoing misbehavior." Id. (quoting Baker v. Monroe Twp., 50 F.3d 1186, 1191 n.3 (3d Cir. 1995)).  In addition, "a supervisor may be liable under § 1983 if he or she implements a policy or practice that creates an unreasonable risk of a constitutional violation on the part of the subordinate and the supervisor's failure to change the policy or employ corrective practices is a cause of this unconstitutional conduct." Id. (citing Brown v. Muhlenberg Twp., 269 F.3d 205, 216 (3d Cir. 2001)).

Here, Plaintiff has failed to present any factual basis upon which Plaintiff can support the allegation that Defendants Balicki, Sullivan, and Hayman, were personally involved in the alleged incident.  While the Defendants bear the burden on summary judgment to identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact," Celotex Corp., 477 U.S. at 323, the party opposing summary judgment must respond and "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 248.  A non-moving party must present more than "'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." McCabe, 494 F.3d at 436-37 (quoting Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005)); see also Anderson,

14

477 U.S. at 249-50.  In opposition to Defendants' arguments that no facts exist to support a finding of personal involvement with respect to Balicki, Sullivan and Hayman, Plaintiff cites the amended complaint as support for a genuine issue of material fact. However, the portions of the amended complaint to which Plaintiff cites provide no more than legal conclusions and unsupported assertions of responsibility. (Pl.'s Letter Br. 4-5.)

Specifically, Plaintiff's counsel states that Defendant Hayman failed to protect Plaintiff from "correction officers that he knew or should have known had 'a propensity toward assaulting inmates' and had 'an assaultive history.'" (Id. at 4 (citing Am. Compl. ¶ 2).)  Plaintiff's counsel further asserts that these Defendants "all acted with 'deliberate indifference' to the serious medical needs of Plaintiff following the beating on July 9, 2007." (Id. (citing Am. Compl. ¶¶ 2-5).)  Plaintiff's counsel additionally asserts "[t]hat these Defendants allowed a human being to be beaten so badly, then quickly transferred to another facility without immediate and appropriate medical care, is sufficient for them to be named personally." (Id. at 4, 5.)  Despite counsel's assertions of deliberate indifference and notice of assaultive history, Plaintiff's counsel provides no factual basis to support any personal involvement on behalf of these Defendants.  In order to prevail against Defendants' motion for summary judgment on the claims against these Defendants, Plaintiff must present more than

15

bare assertions, conclusory allegations, or suspicions to overcome a motion for summary judgment. McCabe, 494 F.3d at 436-37 (quoting Podobnik, 409 F.3d at 594); see also Anderson, 477 U.S. at 249-50.

In the context of supervisor liability, a plaintiff may overcome a motion for summary judgment by setting forth "specific facts showing that a defendant expressly directed the deprivation of a plaintiff's constitutional rights or created such policies where the subordinates had no discretion in applying the policies in a fashion other than the one which actually produced the alleged deprivation; e.g., supervisory liability may attach if the plaintiff asserts facts showing that the supervisor's actions were 'the moving force' behind the harm suffered by the plaintiff." Prall v. Bocchini, No. 10-1228, 2011 WL 4457831, at *21 (D.N.J. Sept. 23, 2011). In Prall, the court dismissed the plaintiff's claims for supervisor liability finding that the plaintiff "alleged no facts to support personal involvement by the supervisory defendants, and simply relies on recitations of legal conclusions such that they failed to supervise or failed to protect plaintiff in violation of his constitutional rights." Id. The Prall court found that those "bare allegations, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" Id. (citing Ashcroft v. Iqbal, 556 U.S. 662, 680 (2009)). Here, like in Prall, Plaintiff has presented only legal conclusions while failing to present specific facts from which the Court can find a

genuine issue of material fact necessary to overcome Defendants' motion for summary judgment on the claims against these Defendants in their individual capacity.  Therefore, summary judgment is granted with respect to the claims against Defendants Balicki, Sullivan, and Hayman in their individual capacities.  Having dismissed the claims against Defendants Balicki, Sullivan, and Hayman in both their individual and official capacities,[2] and the claims against the Defendants Gandy, Saduk, and Roman in their official capacities, the Court shall now address the remaining claims for excessive force against the Defendants Gandy, Saduk, and Roman in their individual capacities.

In addressing Plaintiff's excessive force claim, Defendants argue that the Court may only consider facts consistent with Plaintiff's prison disciplinary hearing and that the limited facts which the Court may consider are insufficient to establish a claim of excessive force under the Eighth Amendment.  A prisoner who brings an excessive force action against correctional officers at the prison must satisfy a two-pronged test as articulated by the Supreme Court in <u>Hudson v. McMillian</u>, 503 U.S. 1 (1992).  In <u>Cipolla v. Hayman</u>, No. 10-0889, 2011 WL 6132252, at *7 (D.N.J. Dec.

---

[2] Defendants make the additional argument that the claims against Defendants Balicki, Sullivan, and Hayman should be dismissed because Plaintiff's amended complaint against Defendants Balicki, Sullivan, and Hayman is barred by the statute of limitations.  As all claims against these Defendants have been dismissed on other grounds, the Court need not address Defendants' statute of limitations argument.

8, 2011) the court articulated the proper inquiries for addressing the two-prong test set forth in Hudson:

> An Eighth Amendment claim includes both an objective component, whether the deprivation of a basic human need is sufficiently serious, and a subjective component, whether the officials acted with a sufficiently culpable state of mind. Wilson v. Seiter, 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). The objective component is contextual and responsive to "'contemporary standards of decency.'" Hudson v. McMillian, 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). The subjective component follows from the principle that "'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" See Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quoting Wilson, 501 U.S. at 297 (internal quotation marks, emphasis, and citations omitted)); Rhodes v. Chapman, 452 U.S. 337, 345, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). What is necessary to establish an unnecessary and wanton infliction of pain varies also according to the nature of the alleged constitutional violation. Hudson v. McMillian, 503 U.S. at 5.

> Where the claim is one of excessive use of force, the core inquiry as to the subjective component is that set out in Whitley v. Albers, 475 U.S. 312, 320-21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (citation omitted): "'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" Quoted in Hudson, 503 U.S. at 6. "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." Id. at 9. In such cases, a prisoner may prevail on an Eighth Amendment claim even in the absence of a serious injury, the objective component, so long as there is some pain or injury and something more than *de minimis* force is used. Id. at 9-10 (finding that blows which caused bruises, swelling, loosened teeth, and a cracked dental plate were not *de minimis* for Eighth Amendment purposes).

> To determine whether force was used in "good faith" or "maliciously and sadistically," courts have identified several factors, including:

> (1) "the need of the application of force"; (2)
> "the relationship between the need and the amount
> of force that was used"; (3) "the extent of injury
> inflicted"; (4) "the extent of the threat to the
> safety of staff and inmates, as reasonably
> perceived by responsible officials on the basis of
> the facts known to them"; and (5) "any efforts made
> to temper the severity of a forceful response."

Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000)
(quoting Whitley v. Albers, 475 U.S. at 321).  Thus, not
all use of force is "excessive," the level of a
constitutional violation.

Id. at 7-8.

In considering whether Plaintiff has met his burden of

setting forth sufficient facts to establish a genuine issue of

material fact on Plaintiff's excessive force claim, Defendants

argue that the Court may only consider those facts which do not

contradict the prison's disciplinary hearing regarding the incident

in question.  When addressing a similar scenario, the Court in

Giudice v. County of Atl., No. 07-1143, 2008 U.S. Dist. LEXIS 92930

(D.N.J. Nov. 13, 2008) stated:

> In determining whether the evidence supports Defendants'
> argument, the Court may not consider any evidence
> presented by Plaintiff that would be inconsistent with
> the disciplinary decision against him finding him guilty
> of attempt to assault. *See* Heck v. Humphrey, 512 U.S.
> 477, 486-87, 114 S. Ct. 2364, 129 L.Ed.2d 383 (1994)
> (holding that plaintiff may not bring § 1983 claim based
> on 'actions whose unlawfulness would render a conviction
> or sentence invalid' unless the conviction had been
> invalidated); see also Edwards v. Balisok, 520 U.S. 641,
> 643-48, 117 S. Ct. 1584, 137 L.Ed.2d 906 (1997)
> (applying Heck where § 1983 plaintiff had been found
> guilty in prison disciplinary proceeding).  In some
> cases, a § 1983 plaintiff's claim will not be completely
> barred because of his conviction, but the plaintiff will
> not be permitted to present evidence inconsistent with

19

his conviction. *See, e.g.*, <u>Lora-Pena v. F.B.I.</u>, 529
F.3d 503, 506 (3d Cir. 2008) (finding that plaintiff's
conviction for resisting arrest did not bar his
excessive force claim because officer could have acted
with excessive force in response to plaintiff's illegal
conduct); <u>Gilbert v. Cook</u>, 512 F.3d 899, 901-02 (7th
Cir. 2008) (finding that § 1983 plaintiff was bound by
disciplinary hearing finding that he struck a guard, but
could still raise claims based on allegations that
guards used unreasonable force after this blow).

<u>Id.</u> at *10-11. In <u>Giudice</u>, the court found that while the court
could not consider "[p]laintiff's claim that the attack on him was
completely unprovoked because this claim is inconsistent with the
disciplinary finding that [p]laintiff was guilty of attempt to
assault[,]" the Court could allow Plaintiff's claims to go forward
on "the genuine issue of material fact regarding the relationship
between the amount of force used and the need for force." <u>Id.</u> at
*12.

Here, in Plaintiff's prison disciplinary hearing,
Plaintiff was found guilty of (1) assaulting any person, (2)
conduct which disrupts or interferes with the security or orderly
running of the correctional facility, and (3) interfering with the
taking of count. (Scott Decl. Ex. B, V.Jackson35-38, 42-45, and 48-
51.) Therefore, to the extent that Plaintiff alleges the force
used against him was entirely unprovoked, the Court may not
consider such an allegation as it would contradict the disciplinary
record. However, as the court did in <u>Giudice</u>, this Court shall
consider whether Plaintiff has set forth sufficient facts to
establish that Defendant Officers Gandy, Saduk, and Roman used

20

excessive force in responding to Plaintiff's conduct.  Plaintiff
certifies that Defendants Gandy and Saduk beat Plaintiff
unconscious and that Defendant Roman assaulted Plaintiff. (Jackson
Certification [Doc. No. 64-1] ¶¶ 9, 10.)   At Plaintiff's
deposition, Plaintiff further testified as to the alleged excessive
force.  (Jackson Dep. Tr. [Doc. No. 58-3], Ex. G, 22:19 - 25:17.)
Plaintiff additionally points to the fact that Plaintiff was found
on his cell floor on the morning following the incident.   The
medical records indicate that when the medical staff found
Plaintiff on the floor of his cell, Plaintiff's right eye area and
right side of his face were swollen, that there was bruising noted
over his right eye area, that his pupils were sluggish to react to
light, and that his eyelids were twitching.  (Id. at Ex. C.)   The
Court further notes that the nurse's exam conducted immediately
following the incident found "[s]welling to right upper cheek and
around outside corner of right eye; abrasion to right forehead;
abrasions to all four knuckles of right hand; redness to both right
and left shoulders; approximately ½ inch area of swelling on right
eyelid; approximately 1/4 inch scratch under left eye."  (Scott
Decl. Ex. B, V.Jackson67.)  The Court additionally notes that the
SID administrative investigation report concludes "once Inmate
Jackson assaulted Custody Staff and then retreated under the
stairwell he could have been secured behind the stairwell gate,
which would have negated Custody Staff's need to pursue him and

risk further Staff injury." (Scott Decl. Ex. C, V.Jackson132.)
Based on Plaintiff's certification and testimony at his deposition,
the Court finds there to be a genuine issue of material fact as to
whether the force used to subdue Plaintiff was excessive and in
violation of Plaintiff's Eighth Amendment rights.

In addition to Defendants' general arguments that
Plaintiff cannot establish sufficient facts to proceed on his
excessive force claim, Defendants make the additional argument with
respect to Defendant Officer Roman that Plaintiff has failed to
present facts sufficient to establish that Defendant Officer Roman
participated in the incident in question. Specifically, Defendants
assert that Defendant Officers Roman, Saduk, and Gandy all
testified that Defendant Officer Roman had no involvement in the
incident. Defendants further assert that Plaintiff did not report
to SID that Defendant Officer Roman was involved in the alleged
altercation. Defendants additionally assert that Plaintiff was
unable to pick Defendant Officer Roman out of a photo array.
Plaintiff however asserts that the photo array was a "photocopy of
a photocopy of some very small, grainy and unclear black and white
copies of pictures," and that "[w]hen Mr. Jackson saw Officer Roman
appear at [the] deposition this past July, he immediately
recognized him." (Pl.'s Br. 9, ¶ 5.) At Plaintiff's deposition
Plaintiff testified that Roman "beat me and assaulted me along with
Gandy and Saduk." (Jackson Dep. Tr. [Doc. No. 58-3] Ex. G, 18:8-

22

12.)  Plaintiff further asserts that "[h]e specifically recalled seeing [Defendant's] last name 'ROMAN' on [the] tag on his shirt during the incident."  (Id.)  When addressing a summary judgment motion, the Court must view the evidence in a light most favorable to the non-moving party and any "justifiable inferences" shall be extended to the non-moving party.  Anderson, 477 U.S. at 255. Additionally, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict."  Id. Therefore, based on Plaintiff's certification and deposition testimony that Defendant Officer Roman participated in the alleged incident, that Plaintiff saw the last name "ROMAN" on the tag of a shirt, and based on Plaintiff's assertion that he recognized Defendant Officer Roman at Defendant Officer Roman's deposition, the Court finds that the evidence viewed in the light most favorable to Plaintiff could support a finding that Defendant Officer Roman participated in the alleged incident.  Therefore, Defendants' argument for summary judgment is denied as to this specific argument regarding Defendant Officer Roman.

        Defendants further argue that Plaintiff's amended complaint should be dismissed because Defendants are entitled to qualified immunity.  Qualified immunity "balances two important interests — the need to hold public officials accountable when they

23

exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231 (2009). The Supreme Court has articulated a two-part inquiry in order to determine whether a defendant is entitled to qualified immunity. See Pearson, 555 U.S. at 232. The Court must evaluate, taken in the light most favorable to the party asserting the injury, "whether the facts that a plaintiff has alleged (see Fed. Rules of Civ. Proc. 12(b)(6), (c)) or shown (see Rule 50, 56) make out a violation of a constitutional right." Id. (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)). The Court must also determine "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." Id. (quoting Saucier, 533 U.S. at 201).

Here, the Court has already found that there exists a genuine issue of material fact as to whether Defendants used excessive force in violation of Plaintiff's Eighth Amendment rights. Thus, the Court finds that Plaintiff has alleged a violation of a constitutional right. Furthermore, the right to be free from "'unnecessary and wanton infliction of pain'" was clearly established at the time of Defendants' alleged misconduct. Giudice, 2008 U.S. Dist. Lexis 92930, at *13 (quoting Whitley, 475 U.S. at 320-21). Therefore, the Court denies Defendants' motion for summary judgment based on qualified immunity.

24

Defendants further argue that they are entitled to summary judgment on Plaintiffs' request for punitive damages. "An award of punitive damages in an action under § 1983 is proper only when a plaintiff shows that defendant's conduct is 'motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protect rights of others.'" Brewer v. Hayman, No. 06-6294, 2009 WL 2139429, at *8 (D.N.J. July 10, 2009) (quoting Smith v. Wade, 461 U.S. 30, 56 (1983)). In order to recover punitive damages, defendants' actions need not "meet the higher standard of an intentional or evil motive," rather "'defendant's conduct must be, at a minimum, reckless or callous.'" Kleinberg v. Clements, No. 09-4924, 2012 WL 1019290, at *8 (D.N.J. Mar. 23, 2012) (quoting Savarese v. Agriss, 883 F.2d 1194, 1204 (3d Cir. 1989)).

Plaintiff certifies that he "was beaten unconscious by Defendants Gandy, Saduk, and others" (Jackson Certification [Doc. No. 64-1] ¶ 9.) Plaintiff further certifies that "Roman saw me under stairwell calling for help. He ignored my pleas for a Sergeant or supervisor. Officer Roman assaulted me by stepping on my hands and kicking them." (Id. ¶ 10.)[3] There has been no evidence presented as to Defendants' intent or motivation.

---

[3] Plaintiff has additionally presented witness statements in which witnesses claim to have heard the Defendants threatening Plaintiff and claim to have heard Plaintiff screaming for help. However, the witness statements presented by Plaintiff have not been presented by way of affidavit or certification.

However, an award of punitive damages may be appropriate if the jury finds for the plaintiff. See Kleinberg, 2012 WL 1019290 at *9. (finding that despite a lack of evidence as to malice or evil intent, officers are presumed to know the law and that if the jury were to believe the plaintiff's version of the events, punitive damages could be appropriate) (citing Savarese, 883 F.2d at 1204 n.14). As the court did in Kleinberg, this Court finds "it best to resolve this issue after the conclusion of all the evidence rather than pre-trial. If the evidence is lacking as to recklessness and malice, defendants may renew their motion to strike a demand for punitive damages at that time." Id. at *9. Therefore, the Court shall deny without prejudice Defendants' motion on the issue of punitive damages.

Defendants further argue that because Plaintiff was incarcerated at the time the complaint was filed, Plaintiff was required to exhaust the available administrative remedies under the Prisoner Litigation Reform Act ("PLRA") 42 U.S.C. § 1997e(a). Defendants further assert that Plaintiff's failure to exhaust his administrative remedies as to the claims asserted in this case bars Plaintiff's action. (Defs.' Br. 16.) In response, Plaintiff contends that even though he was a prisoner at the time he filed his initial complaint, he was not in prison at the time he filed his amended complaint, and thus the PLRA is inapplicable. (Pl's. Br. 3.) Plaintiff additionally argues that had Defendants moved to

26

have Plaintiff's complaint dismissed on exhaustion grounds, the case would have been dismissed without prejudice to Plaintiff re-filing his case following his release. (Id.) Plaintiff's counsel raised additional arguments at oral argument asserting that Plaintiff's transfer and administrative segregation led to his inability to exhaust his administrative remedies, and therefore Plaintiff's failure to meet the exhaustion requirements of the PLRA should be excused.  (Oral Argument, Dec. 19, 2011.)

The PLRA provides in relevant part that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  Porter v. Nussle, 534 U.S. 516, 532 (2002). "[A]n inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues." Booth v. C.O. Churner, 532 U.S. 731, 741 n.6 (2001).  Furthermore, "'[i]t is beyond the power of this court - or any other - to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis.'"  Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) (quoting Beeson v. Fishkill Corr.

27

Facility, 28 F. Supp. 2d 884, 894-95 (S.D.N.Y. 1998)). A plaintiff is a prisoner under the PLRA if he was confined in a correctional facility on the date the complaint was filed.  Ahmed v. Dragovich, 297 F.3d 201, 210 (3d Cir. 2002).  Failure to exhaust available administrative remedies is an affirmative defense, and it is the burden of a defendant asserting the defense to plead and prove failure to exhaust.  Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002)(citing Williams v. Rynyon, 130 F.3d 568, 573 (3d Cir. 1997).

Here, the alleged incident occurred on July 9, 2007, while Plaintiff was incarcerated at BSP.  (Pl.'s Compl. 7.) Between August 15, 2007 and April 6, 2009, Plaintiff submitted several remedy forms,[4] only one of which referenced the alleged assault of Plaintiff.  In Plaintiff's August 15, 2007 remedy form, Plaintiff requested a polygraph test for his disciplinary hearing, and also handwritten on the form is the following: "This I/M states that he did not assault the officer[.] [I]t is his word against the officers[].  There is no SID report in his folder.  I/M is waiting on a[] SID Investigation.  Requested a polygraph from SID.  I/M claims he was [a]ssaulted." (See Scott Decl. Ex. C, V.Jackson88.)

---

[4] The remedy forms submitted by Plaintiff contained five parts.  The inmate submitting the form was to complete part one by explaining his grievance and the remedy requested.  Part two was to be completed by the staff member who received the remedy form.  Part three contained the staff response to the remedy requested.  Part four contained a space for the inmate to appeal the response given in part three.  Part five contained space for an appeals decision.  (See Decl. of Robert LaForgia [Doc. No. 58-5] Ex. B.)

Plaintiff's request for a polygraph was denied, but his statement in the August 15, 2007 remedy form set forth that Plaintiff was assaulted. (Id. at 72.)  Plaintiff submitted his initial complaint in this matter on March 9, 2009 and it was filed on March 13, 2009. (Pl.'s Compl. 8.)  Plaintiff was released from custody during December 2009. (Certification of Vince Jackson [Doc. No. 64-1] ¶ 4.)  Plaintiff then filed his amended complaint on January 25, 2010. (Pl.'s Am. Compl.)

Plaintiff admits that he was a prisoner incarcerated with the New Jersey Department of Corrections at the time his complaint was filed on March 13, 2009. (Certification of Vince Jackson [Doc. No. 64-1] ¶¶ 3-4.)  Additionally, Plaintiff's counsel admitted at oral argument that Plaintiff did not exhaust the official administrative remedies detailed in the SWSP Inmate Handbook or in the EJSP Inmate Handbook.  (Oral Argument, Dec. 19, 2011.) Plaintiff's counsel did not, however, concede that Plaintiff's claims should be dismissed under the PLRA.  Id.  Plaintiff's counsel asserts that the PLRA does not bar Plaintiff's federal claims for the following reasons: (1) the amended complaint was filed when Plaintiff was no longer a prisoner; (2) had Defendants moved to have Plaintiff's original complaint dismissed on exhaustion grounds, the case would have been dismissed without prejudice to Plaintiff re-filing his case following his release; and (3) Plaintiff was unable to exhaust his administrative remedies

due to the fact that he was transferred twice and was placed in administrative segregation.

In addressing Plaintiff's first argument, the Court notes that Plaintiff's amended complaint was filed on January 25, 2010, after Plaintiff's release from prison.  However, the filing of this amended complaint does not excuse the fact that the original complaint was filed in violation of the PLRA.  See Tretter v. Penn. Dep't of Corr., No. 3:11-CV-00423, 2012 WL 360029 (M.D. Pa. Feb. 2, 2012).  In Tretter, the District Court for the Middle District of Pennsylvania held that the filing of an amended complaint by the surviving relatives of a deceased inmate did not overcome the fact that the deceased failed to exhaust his administrative remedies before filing the initial complaint.  Id. at *4.  The Tretter court noted that a "plaintiff's status as a prisoner at the time of filing was controlling and that his change of status, or his release from prison, did not excuse plaintiff from exhausting his administrative remedies." Id. at *4 (citing Ahmed v. Dragovich, 297 F.3d 201 (3d Cir. 2002).  The court then dismissed plaintiff's claims for failure to exhaust administrative remedies.

Likewise, albeit for § 1997e(e) of the PLRA and not § 1997e(a),[5] the Eleventh Circuit found that plaintiff's status as of

---

[5] 42 U.S.C. § 1997(e)(e) provides:  "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."

the filing of the initial complaint determines the applicability of the PLRA to a plaintiff's claims. Harris v. Garner, 216 F.3d 970 (11th Cir. 2000). In Harris, the plaintiffs had filed their complaint when they were prisoners and were therefore subject to the PLRA. Id. at 972. The plaintiffs were released from prison and attempted to then amend their complaint to indicate that they were no longer prisoners subject to the PLRA's requirements. Id. The Eleventh Circuit held that the filing date of the amendment could not overcome the requirements of the PLRA:

> The reason such an amendment or supplement makes no difference is that . . . the confinement status of the plaintiffs at any time after the lawsuit is filed is beside the point. The status that counts, and the only status that counts, for purposes of section 1997e(e) is whether the plaintiff was a 'prisoner confined in a jail, prison, or other correctional facility' at the time the federal civil action was 'brought,' i.e., when it was filed. It is an undisputed historical fact that all of these plaintiffs were confined in a Georgia prison or correctional facility at the time their complaint was filed. No amendment of supplement to a pleading can change a historical fact, and the [amended complaint] in question did not purport to do so.

Id. at 981. The Eleventh Circuit then affirmed the District Court's dismissal of plaintiffs' claims and remanded to have several claims dismissed without prejudice to allow for refiling following plaintiffs' release. Id. at 985.

Here, it is undisputed that Plaintiff's initial complaint was filed while Plaintiff was a prisoner incarcerated with the New Jersey Department of Corrections. (Jackson Certification [Doc. No.

64-1] ¶¶ 3-4.)   As such, Plaintiff was required to exhaust the remedies available to him before filing his complaint.   In addition, the filing of the amended complaint after he was released does not save the original action from dismissal for failure to exhaust.   The fact that Plaintiff's amended complaint was filed while Plaintiff was no longer a prisoner does not excuse Plaintiff's failure to exhaust his administrative remedies before filing the initial complaint as required by the PLRA.

In Plaintiff's second argument in opposition to the applicability of the PLRA, Plaintiff argues that Plaintiff's federal claims are not barred by the PLRA because Defendants failed to raise a PLRA defense in response to the original complaint. However, Plaintiff provides no support for his assertion that the PLRA defense is waived if not brought by motion in response to the original complaint.   In their answer to Plaintiff's amended complaint, Defendants raised as their seventeenth affirmative defense that "Plaintiff has failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a)."   (Answer to Am. Comp. 7.)   Moreover, the Third Circuit in Drippe v. Tobelinski, 604 F.3d 778, 782 (3d Cir. 2010) explicitly declined to "read into the PLRA a procedural requirement for which the PLRA provides no textual support."   In Drippe, Plaintiff sought to have the Court impose a requirement that the PLRA exhaustion defense be raised by Defendants before the deadline for dispositive

motions.  (Id.)  The Third Circuit found that the PLRA contained no
such timing requirement and therefore declined to impose such a
requirement.  (Id.)  However, the Third Circuit held that the
filing of a summary judgment motion based on a PLRA affirmative
defense filed outside the deadline for dispositive motions may only
be filed after receiving leave from the Court to file a dispositive
motion outside the scheduling order.  (Id. at 784-85.)  The Court
here finds Plaintiff's argument unpersuasive.  The Court finds that
Defendants' failure to raise a PLRA defense in response Plaintiff's
initial complaint does not waive Defendants' right to assert a PLRA
defense to Plaintiff's amended complaint.

Finally, Plaintiff argues that he is excused from the
requirements of the PLRA because his transfer to SWSP and then to
EJSP, and as a result of his administrative segregation, he was
unable to exhaust his administrative remedies.  However, "the Third
Circuit has found that transfer to another prison facility does not
excuse the PLRA's exhaustion requirement."  In re Bayside Prison
Litig., No. 97-5127, 2008 WL 2387324, at *4 (D.N.J. May 19,
2008)(citing Williamson v. Wexford Health Sources, Inc., 131 F.
App'x 888, 890 (3d Cir. 2005).  In both In re Bayside Prison Litig.
and Williamson, plaintiffs who had failed to exhaust their
administrative remedies had their cases dismissed for failure to
exhaust.  Williamson, 131 F. App'x at 890; In re Bayside Prison
Litig., 2008 WL 2387324, at *5.  In both of those cases, the fact

that the plaintiff had been transferred had no effect on the Court's decision to dismiss the claims based the on plaintiff's failure to exhaust under the PLRA. Williamson, 131 F. App'x at 890; In re Bayside Prison Litig., 2008 WL 2387324, at *4. Likewise, the Sixth Circuit stated in Napier v. Laurel Cnty., Ky., 636 F.3d 218 (6th Cir. 2011), "[g]enerally, the transfer of a prisoner from one facility to another does not render the grievance procedures at the transferor facility 'unavailable' for the purposes of exhaustion.'" Id. at 223 (citations omitted). Moreover, Plaintiff filed grievance forms while at both SWSP and EJSP. (Scott Decl. Ex. B; LaForgia Decl. Ex. B.) Therefore, the fact that Plaintiff was transferred from BSP to SWSP then to EJSP does not excuse Plaintiff of his obligations under the PLRA.

With respect to Plaintiff's argument that he was unable to exhaust his administrative remedies due to his administrative segregation, the Court finds this argument unpersuasive in light of the fact that Defendants have provided the Court with copies of several unrelated administrative complaints filed by Plaintiff while in administrative segregation.  By way of example, on September 25, 2007, two months after the alleged July 9, 2007 incident, Plaintiff filed a remedy form stating:

> I have been in AD-SEG since 8/29/07.  Since being here A unit has not been called to the law library.  I have been inquiring about this to the officers and no one seems to know the schedule.  I have been sentenced to over 15 months in Ad-Seg and would like to exercise my right to appeal.  Could you please send me a law library schedule

34

and also remedy this situation.

(LaForgia Decl. Ex. B).   The fact that Plaintiff filed a remedy form in reference to this unrelated matter while in Administrative Segregation demonstrates that administrative segregation did not impede Plaintiff's ability to exhaust the available administrative remedies.  Plaintiff filed additional remedy forms on February 13, 2008; February 26, 2008; August 18, 2008; September 12, 2008; November 4, 2008; February 2, 2009; and April 6, 2009.  (LaForgia Decl. Ex. B.)  Moreover, this argument was raised by Plaintiff at oral argument, but no affidavits or certifications were filed to support Plaintiff's argument.  Faced with the undisputed fact that Plaintiff filed remedy forms while in administrative segregation, Plaintiff's administrative segregation does not excuse Plaintiff's failure to comply with the requirements of the PLRA.

While the Court finds Plaintiff's arguments opposing the application of the PLRA to be unavailing, failure to exhaust available administrative remedies is an affirmative defense, and it is the burden of a defendant asserting the defense to plead and prove it.  Ray, 285 F.3d at 297-98.  In construing the evidence before the Court in the light most favorable to the non-moving party, the Court finds unresolved questions as to whether Plaintiff's claim of excessive force was exhausted.  The Court notes that Defendants submitted in their papers an administrative investigation report written by Kenneth Crotty, a senior

35

investigator with the Department of Corrections, Special Investigation Division, which addressed the allegations made by Plaintiff as to the alleged use of excessive force and made findings as to Plaintiff's allegations. (Scott Decl., Ex. C, V.Jackson124.) Defendants additionally submitted a statement by Plaintiff in which Plaintiff complained of the alleged use of excessive force. (Scott Decl. Ex. C., V.Jackson183-84.) The Court notes that Plaintiff also included the Special Investigations Division's Administrative Investigation report as Exhibit D to his opposition to Defendants' motion for summary judgment. (Amended Document by Vince Jackson [Doc. No. 67] Ex. D.) In the report, the Special Investigations Division found that steps could have been taken which would have negated prison staff's need to pursue Plaintiff in the manner which they did. (Scott Decl. Ex. C, V.Jackson132.)

Plaintiff's initial complaint alleged "[a]ll remedies and grievances have been forward[ed] to the Administration and the Department of Correction[s]. No response has been forwarded back to Mr. Jackson and it ha[s] been over 300 days." (Pl.'s Compl. 8.) At Plaintiff's deposition he repeatedly asserted that he filed grievance forms related to the incident in question. (Jackson Dep. Tr. [Doc. No. 58-3] Ex. G, 44:5-50:16.) A review of the documents submitted along with Defendants' motion for summary judgment show that, in fact, Plaintiff filed a remedy form on August 15, 2007

requesting a polygraph, asserting that he was assaulted, and stating that no SID report was in his folder. (Scott Decl. Ex. C, V.Jackson88.) While Plaintiff's opposition to Defendants' summary judgment motion does not elaborate on the process by which Plaintiff allegedly forwarded his grievances to the Administration, the exhibits attached to Defendants' summary judgment motion establish that the events of July 9, 2007 were addressed by prison administrators during the Special Investigations Division's administrative investigation of the incident.[6] (Scott Declaration, Ex. C, V.Jackson124.) Moreover, an email dated August 1, 2007 indicates that the SID investigation and report were regarding "allegations made by I/M Jackson." (Id. at Ex. C, V.Jackson82.)

Several courts have found that exhaustion of alternative grievance procedures, which run parallel to the official grievance procedures, can be sufficient to meet the exhaustion requirements of the PLRA. See Baez v. Fauver, 351 F. App'x 679, 681-82 (3d Cir. 2009); Smith v. Merline, 719 F. Supp. 2d 438, 445-46 (D.N.J. 2010). In Baez, the Third Circuit in a nonprecedential opinion vacated and remanded the decision of a district court which failed to consider the existence of a parallel reporting procedure put in place at

---

[6] Additionally, the events of July 9, 2007 were addressed at Plaintiff's disciplinary hearing of August 20, 2007. (Scott Decl. Ex. B.) However, in Woodford v. Ngo, 548 U.S. 81 (2006), the Supreme Court required that a "grievant compl[y] with the system's critical procedural rules." Id. at 2388. Plaintiff does not assert that he exhausted his administrative remedies as a result of the disciplinary hearing.

BSP. <u>Baez</u>, 351 F. App'x at 682.  The plaintiff in <u>Baez</u> transmitted a letter complaint to the prison's Internal Affairs department, but failed to complete the official Administrative Remedy Form ("ARF"). <u>Id.</u> at 680.  According to the deposition of a prison administrator, the prison had been converting all complaints regarding a prison lockdown to administrative remedy forms regardless of the form in which they were received.  <u>Id.</u> at 682.  The Third Circuit remanded noting multiple issues material to the exhaustion inquiry, including:

> (1) whether Bayside began accepting letter complaints in lieu of ARFs; (2) whether Baez's letter to Internal Affairs was, in fact, converted to an ARF, forwarded to the Special Investigations division, and adjudicated by Bayside in a timely manner; (3) if so, whether Baez filed suit prematurely, or whether he properly awaited adjudication of his ARF *before* commencing his federal action; and (4) whether Bayside afforded identical administrative review and remedies for "converted" ARFs, such as Baez's, and ARFs prepared personally by inmates.

<u>Id.</u>  Finding that these fact issues impacted directly on whether the plaintiff properly exhausted his administrative remedies, and were not specifically addressed by the district court, the Third Circuit vacated the grant of summary judgment and remanded the case.  <u>Id.</u> at 682.

In <u>Smith</u>, the court recognized that "an inmate may satisfy the exhaustion requirement [of the PLRA] where he follows an accepted grievance procedure, even where that procedure contradicts a written policy."  <u>Smith</u>, 719 F. Supp. 2d at 445.  The <u>Smith</u> court stated that while a "prison's administrative grievance

38

program serve[s] as the measure for whether an inmate has exhausted his administrative remedies," the court need not "blindly apply the written administrative exhaustion procedure without considering the reality of the review process." Id. at 445 (citing Spruill v. Gillis, 372 F.3d 218, 231 (3d Cir. 2004); Williams v. Beard, 482 F.3d 637, 640 (3d Cir. 2007)). In Smith, the plaintiff claimed to have submitted a handwritten grievance through a grievance procedure recognized by the prison. Id. at 444. However, plaintiff did not complete an official grievance form or an inmate request form. Id. The Smith court found "several material questions in genuine dispute: (1) Whether a parallel procedure for addressing grievances exists and is recognized at the [Gerard L. Gormley Justice Facility] GGJF; (2) Whether Plaintiff adequately raised the issues presented in this litigation through such a grievance procedure; and (3) Whether Plaintiff exhausted that remedy and provided GGJF officials adequate time to respond to the relevant grievances." Id. at 447. The Smith court therefore found that the defendants were not entitled to summary judgment on the question of administrative exhaustion.

Here, the documents submitted demonstrate that Plaintiff informed the Special Investigations Division of his claims and that the Special Investigations Division conducted an administrative investigation into Plaintiff's allegations. (See Scott Decl. Ex. C, V.Jackson124-32.) However, neither party has addressed whether

this administrative investigation is the same investigation that
would have occurred had Plaintiff completed a remedy form.
Moreover, Defendants have not disputed that there is no parallel
grievance procedure.  Consequently, the Court finds at this time
that Defendants have not met their burden on this affirmative
defense.  Defendants' motion does not adequately address the role
of the Special Investigations Division or whether the Special
Investigations Division's role overlaps with the established
grievance procedures.  Consequently, Defendants' motion for summary
judgment on the issue of exhaustion is denied without prejudice
with the right to refile on this issue.

     For the reasons set forth above, and for good cause
shown:

     IT IS on this 29th day of June 2012,

     **ORDERED** that Defendants' motion for summary judgment
[Doc. No. 58] shall be, and hereby is, **GRANTED** in part, **DENIED** in
part, and **DENIED WITHOUT PREJUDICE** in part; and it is further

     **ORDERED** that Defendants' motion for summary judgment
shall be, and hereby is, **GRANTED** with respect to all claims against
the Defendants in their official capacities; and it is further

     **ORDERED** that Defendants' motion for summary judgment
shall be, and hereby is, **GRANTED** with respect to all claims against
Defendants Balicki, Sullivan, and Hayman in their individual

capacities;

    **ORDERED** that Defendants' motion for summary judgment shall be, and hereby is, **DENIED** with respect to Plaintiff's excessive force claims against Defendant Officers Gandy, Saduk, and Roman; and it is further

    **ORDERED** that Defendants' motion for summary judgment shall be, and hereby is, **DENIED** with respect to Defendants' arguments based on the qualified immunity of Defendant Officers Gandy, Saduk, and Roman; and it is further

    **ORDERED** that Defendants' motion for summary judgment shall be, and hereby is, **DENIED WITHOUT PREJUDICE** with respect to Defendants' argument that Plaintiff is not entitled to punitive damages; and it is further

    **ORDERED** that Defendants' motion for summary judgment shall be, and hereby is, **DENIED WITHOUT PREJUDICE**, with respect to Defendants' argument that Plaintiff failed to exhaust his administrative remedies.


                    s/ Ann Marie Donio
                    ANN MARIE DONIO
                    UNITED STATES MAGISTRATE JUDGE