IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

VINCE JACKSON,

          Plaintiff,              Civil No. 09-1141 (AMD)

    v.

E. GANDY, et al.,

          Defendants.

## MEMORANDUM OPINION AND ORDER

In this civil rights litigation, Defendant Officers E. Gandy, A. Saduk, and Roman (hereinafter, "Defendants") assert that Plaintiff Vince Jackson (hereinafter, "Plaintiff") failed to exhaust the requirements of New Jersey's inmate remedy system, N.J.A.C. § 10A:1-4.1, 4.9 (hereinafter, the "inmate remedy system"). The Court conducted a two-day trial without jury on the issue of exhaustion on March 7, 2014 and March 10, 2014, at which time a number of individuals testified concerning the issue of exhaustion and the general circumstances giving rise to this litigation. Having reviewed the testimony and exhibits entered into evidence, and for the reasons set forth herein, the Court finds that Plaintiff sufficiently exhausted available remedies.

In his complaint,[1] Plaintiff alleges that, on July 8, 2007, Defendant Officer E. Gandy (hereinafter, "SCO Gandy") removed Plaintiff's television from his cell in the F-Unit at Bayside State Prison (hereinafter, "Bayside") as a result of Plaintiff's failure to timely return his food tray. (See Complaint [Doc. No. 1], 7 on the docket.) Plaintiff alleges that Defendants thereafter ignored his protests concerning the television's removal and denied his request to speak with an area supervisor. (Id.) Plaintiff further asserts that SCO Gandy directed him to the dayroom staircase on July 9, 2007, at which time SCO Gandy threw Plaintiff's television down the stairs, and SCO Gandy and Defendant Officer A. Saduk (hereinafter, "SCO Saduk") proceeded to assault him. (Id.) Plaintiff contends that despite his alleged calls for a supervisor, Defendant Officer Roman (hereinafter, "SCO Roman") witnessed the incident, but left the scene without intervening. (Id.) The New Jersey Department of Corrections (at the direction of the New Jersey Internal Affairs – Special Investigation Division) then transferred Plaintiff to South Woods State Prison (hereinafter,

---

[1] Plaintiff filed his initial complaint on March 13, 2009 and a supplemental and amended pleading on January 25, 2010. (See generally Complaint [Doc. No. 1]; Amended Complaint [Doc. No. 17].) Plaintiff's supplemental and amended pleading generally alleges that the New Jersey Department of Corrections and certain administrations of Bayside State Prison failed to adequately train and supervise their employees and/or correction officers. (See generally Amended Complaint [Doc. No. 17].)

"South Woods") at or around 10:00 P.M. that evening. (Id. at 8 on the docket.) The morning after his transfer, Plaintiff alleges that South Woods' officials found Plaintiff unconscious on the floor of his detention cell, and transported him to an outside hospital for treatment related to his significant head trauma. (Id.) Plaintiff asserts that "[a]ll remedies and grievances have been forward[ed] To The Administration And The Department Of Correction[s]," but that he received no response concerning his allegations of an assault. (Id.)

On September 6, 2011, Defendants moved for summary judgment in part on the basis that Plaintiff's failure to exhaust his administrative remedies barred his claims. (See generally Brief in Support of Defendants' Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56 [Doc. No. 58-1], 16-21.) At that time, Defendants asserted that "a diligent search of the records" revealed that Plaintiff did not file any inmate request forms while assigned to South Woods "from July 9, 2007 through August 29, 2007." (Id. at 21.) By Memorandum Opinion and Order dated June 29, 2012, the Court found the record insufficient to resolve the issue of exhaustion. See generally Jackson v. Gandy, 877 F. Supp. 2d 159 (D.N.J. 2012). The Court specifically concluded that Plaintiff filed a grievance "remedy form" on August 15, 2007 in which Plaintiff requested "a polygraph" examination and asserted that corrections officers assaulted

him. Id. at 174. The Court further found that the mechanism by which Plaintiff "forwarded his grievances to the Administration" resulted in an SID-initiated administrative investigation, in addition to a disciplinary hearing. Id. at 178. In addressing whether this submission satisfied the applicable exhaustion requirements, the Court noted that exhaustion of "alternative [and parallel] grievance procedures" can suffice "to meet the exhaustion requirements of the PLRA." Id. The Court found issues of disputed fact, however, concerning whether the investigation performed by SID constituted "the same investigation that would have occurred [in the event] Plaintiff completed a [inmate] remedy form" in accordance with the express inmate remedy system. Id. at 179. The Court further found a factual dispute concerning whether the Special Investigations Division's role "overlaps with the established grievance procedures." Id. The Court therefore found that Defendants failed to meet their burden on the issue of exhaustion, and denied Defendants' motion for summary judgment without prejudice. Id.

On January 6, 2014, Defendants moved to conduct a bifurcated trial concerning Defendants' exhaustion defense. (See Motion to Bifurcate [Doc. No. 156], 1.) By Order dated January 15, 2014, the Court found bifurcation appropriate, "because exhaustion constitutes a precondition to proceeding to trial with respect to Plaintiff's excessive form claim, and

because the Court, rather than the jury, will resolve any factual disputes concerning this issue through a bench trial." (Order [Doc. No. 164], Jan. 15, 2014, 4.) The Court accordingly scheduled the bench trial to convene on March 7, 2014. (See Amended Order Setting Bench Trial Date [Doc. No. 168] Feb. 18, 2014.)

During the bench trial, the following individuals testified: James E. Dutch (Planning Associate at Bayside), Karen Balicki Phillips (former Administrator of Southwoods), Kenneth Crotty (SID Investigator), Plaintiff, and Ruby L. Jackson (Plaintiff's mother). The testimony generally concerned the inmate remedy system, the procedure by which New Jersey state prisons process inmate remedy forms, and the nature and scope of an SID investigation, including the investigation that arose out of Plaintiff's allegations. Plaintiff also testified concerning his submission of the August 15, 2007 inmate remedy form and the relevant surrounding circumstances. The parties also introduced a number of exhibits.

In light of the testimony presented and the parties' exhibits, the Court makes the following factual findings:

a.   **Inmate Remedy System, generally**

1.   At all times relevant to this litigation, the New Jersey Department of Corrections maintained a generally standardized inmate remedy system and

5

grievance procedure.[2] (See, e.g., Transcript of Proceedings Vol. 1 (hereinafter, "Tr. Vol. 1"), 47:13-48:2.)

2.    The inmate remedy system and grievance procedure provides the manner in which inmates present complaints to correctional facility staff.[3] (See Tr. Vol. 1 at 47:13-20, 51:16-22.)

3.    The inmate remedy system generally proceeds in accordance with the five (5) part inmate remedy form on a single, one-page document, and the inmate handbook, to the extent available to individual inmates, advises inmates of the relevant process and procedures.[4] (See id. at 35:23-37:12, 101:6-102:14.)

4.    Inmates may obtain the inmate remedy forms from various locations throughout the New Jersey state prisons and from a number of prison officials, including social workers and the ombudsman. (See id. at 95:18-22.)

5.    The coordinator of the inmate remedy system reviews and processes inmate remedy forms. (See id. at 36:1-13, 99:12-16.)

6.    In part one, the inmate sets forth the particular issue for which the inmate seeks redress and/or an administrative response. (See id. at 35:22-36:13, 97:4-5.)

7.    The inmate must thereafter put the form, with part one completed, in the lockbox designated as a repository for the inmate remedy forms. (See id. at 97:14-98:2.)

---

[2] Defendants' exhibit two sets forth the operative sections of the New Jersey Administrative Code, which govern the inmate remedy system.

[3] Defendants' exhibits one and twelve through nineteen—which set forth identical inmate remedy forms for Bayside and East Jersey State Prison—further reflect the uniformity of the inmate remedy system across the New Jersey state prison system.

[4] Defendants' exhibits three and four set forth the inmate handbooks for South Woods State Prison and East Jersey State Prison. Plaintiff disputed the relevance of the introduced handbooks and the weight to be afforded such exhibits. (Id. at 200:19-201:10.) The Court admitted the exhibits over Plaintiff's objections. (Id. at 201:1-13.) The Court further notes that the testimony generally sets forth the salient portions of the inmate handbook. For the reasons set forth infra, the disposition of the exhaustion issue does not turn on the nature of the information set forth in the inmate handbook.

8.  The coordinator of the inmate remedy system (or a designee) retrieves the forms at regular intervals and then processes the form in one of two manners (one formal, the other informal). (See id. at 36:1-13, 99:12-16.)

9.  The coordinator processing depends upon whether the coordinator deems the request compliant with the inmate remedy system. (See id. at 100:6-19, 123:10-129:10.)

10. In accordance with formal processing, the coordinator acknowledges receipt of the form in part two, and electronically logs the form's contents for tracking purposes. (See id. at 36:1-13, 99:12-16.)

11. The coordinator then designates the appropriate department for an investigation and/or response and routes the form accordingly. (Id. at 36:10-13.)

12. An inmate remedy form may also, in certain instances, be routed directly to an SID investigator, particularly in the event that the remedy form alleged a correctional officer-initiated assault. (Id. at 163:1-16, 165:11-16, 169:16-170:6, 171:1-3.)

13. The receiving department reviews the request, conducts the requisite investigation, and responds in part three of the inmate remedy form. (Id. at 36:18-20, 111:8-14.)

14. The coordinator thereafter returns a copy of the form to the inmate. (Id. at 37:1-8, 111:17-19.)

15. Upon receipt of the inmate remedy form, the inmate may then appeal the department's response by resubmitting the inmate's remedy form with the appropriate indication in part four. (Id. at 37:1-8, 111:17-19.)

16. In the event an inmate files an appeal, the administrator reviews the information and either requires a supplemental response or deems the department's response adequate, at which time the administrator provides the requisite notation in part five. (Id. at 112:4-12.)

17. The administrator's completion of part five of the inmate remedy form constitutes the final agency decision in connection with the formal inmate remedy system. (See id. at 37:9-15, 115:8-24.)

18. Completion of part five of the inmate remedy form also renders the grievance procedures fully exhausted. (See id. at 37:9-15, 115:8-24.)

19. If the coordinator perceives a deficiency in the information set forth by the inmate in part one (for example, failing to articulate a question requiring a

response) and/or the inmate's request exceeds the scope of the inmate remedy system (for example, setting forth information or requests with relevance to a disciplinary proceeding), the coordinator informally processes the form. (See id. at 100:6-19, 123:10-129:10.)

20. In such an instance, an inmate remedy form may be disregarded from the inmate remedy system. (See id. at 100:6-19, 123:10-129:10.)

21. In the alternative, a deficient form may be returned to the inmate with a corrective action form indicating the proper procedures relevant to the inmate's request.[5] (See id. at 100:6-19, 123:10-129:10.)

22. A form will not necessarily be deemed deficient solely because it requests a polygraph and/or refers to an SID investigation or related SID report. (Compare id. at 54:5-55:3, with id. at 125:15-127:25.)

23. An inmate may also circumvent the inmate remedy system process by depositing the inmate remedy form in a box other than the lockbox designated for inmate remedy forms. (Id. at 77:5-81:2.)

24. In such an instance, and notwithstanding the absence of the coordinator's signature in part two, a department or prison official may provide a response, without the involvement and tracking of the inmate remedy system coordinator. (Id. at 77:5-81:2.)

b. **Plaintiff's Inmate Remedy Form**

25. Plaintiff signed an inmate remedy form dated August 15, 2007, and produced by Defendants in the course of discovery in this action.[6] (See Defendants' exhibit one (hereinafter, "D1") (bates-stamped "V.Jackson 88" by Defendants).)

26. Plaintiff's remedy form (handwritten in part and typed in part) states that officers assaulted him and that he sought a polygraph test in order to assess his veracity. (See D1.)

---

[5] The inmate remedy form specifically enables the inmate remedy system coordinator to return a remedy form to an inmate prior to completing part two by indicating that "[n]o action" had been taken, and appending a "DOC Corrective Action form[.]" (See D1.)

[6] As set forth supra, D1 sets forth Plaintiff's inmate request system and remedy form dated August 15, 2007. D1 further bears the bates-stamp "V. Jackson 88[.]"

27. Plaintiff's inmate remedy form does not set forth any indication that the coordinator received his request. (See id.)

28. Plaintiff's inmate remedy form does not have any department response, Plaintiff-initiated appeal, or administrator review pursuant to the remaining parts of the inmate remedy system and remedy form.[7] (See id.)

29. On the date set forth on Plaintiff's remedy form, Plaintiff was confined in the detention unit at South Woods. (See Transcript of Proceedings Volume 2 (hereinafter, "Tr. Vol. 2"), 244:9-246:14.)

30. Plaintiff's confinement to his cell precluded him from depositing his inmate remedy form in the appropriate box absent guard supervision. (See id. 267:8-269:2.)

31. Plaintiff asked his social worker to deposit the inmate remedy form on his behalf, and thereafter reminded his social worker to deposit his remedy form. (See id. at 267:9-11, 267:23-268:1.)

32. South Woods received Plaintiff's form prior to Plaintiff's August 20, 2007 disciplinary proceeding.[8]

33. South Woods utilized the inmate remedy form in connection with the adjudication of Plaintiff's disciplinary charges.[9]

---

[7] Defendants' exhibits twelve through nineteen set forth Plaintiff's inmate request system and remedy forms dated September 25, 2007, February 13, 2008, February 26, 2008, August 18, 2008, September 12, 2008, November 4, 2008, February 2, 2009, and April 6, 2009. These remedy forms originated during Plaintiff's detention in East Jersey State Prison and each form contains a staff response in part three.

[8] As set forth infra, Defendants' exhibit one (hereinafter, "D1"), Plaintiff's exhibits one and two (hereinafter, "P1" and "P2") have all been marked for identification in connection with Plaintiff's disciplinary hearing as "A19[.]" (Compare D1 (Plaintiff's inmate remedy form on which he requests, in part, a polygraph examination); P1 (Plaintiff's request for a polygraph examination for the purposes of his disciplinary hearing); P2 (same), with D6 (identifying "A19 POLYGRAPH request" as the correctional facility's confidential evidence in connection with the adjudication of Plaintiff's disciplinary charge).)

[9] Defendants' exhibit six (hereinafter, "D6") sets forth the nature of Plaintiff's disciplinary charge, the disciplinary hearing dates and/or postponements, the parties' evidence, witness lists, and a summary of the adjudication of Plaintiff's disciplinary charge.

c.  **Plaintiff's disciplinary hearing**

34.  SCO Gandy filed a disciplinary charge against Plaintiff on July 10, 2007. (See Defendants' exhibit six at 1.)

35.  Plaintiff also requested a polygraph examination in order to "prove" that Plaintiff did not assault the Defendant Correctional Officers. (Tr. Vol. 2 at 256:8-11, 257: 18-19; see also P1 (a request from the disciplinary hearing officer to Bayside State Prison for the polygraph examination of Plaintiff).)

36.  The disciplinary hearing officer thereafter forwarded to the administration of Bayside Plaintiff's request for a polygraph examination dated August 15, 2007, together with a copy of Plaintiff's disciplinary charge and "related evidence[.]" (P1 (request for polygraph), P2 (request for polygraph).)

37.  The Associate Administrator of Bayside denied Plaintiff's request for a polygraph examination, and directed that the disciplinary hearing process proceed "based on the merits of the testimony and evidence provided." (Plaintiff's exhibit four (hereinafter, "P4").)

38.  Plaintiff's disciplinary hearing was postponed a number of times as a result of the need for witness statements,[10] preparation of the SID report, and/or Plaintiff's requests for a polygraph examination.[11] (See D6 at 1 (setting forth the various grounds for postponement of Plaintiff's disciplinary hearing date).)

---

[10]  Plaintiff's exhibit three sets forth the disciplinary hearing officer's request for additional information and/or evidence in anticipation of Plaintiff's disciplinary hearing.

[11]  Plaintiff's exhibit five sets forth Plaintiff's July 12, 2007 request for a polygraph, a request witnessed by Kenneth Crotty. (See Tr. Vol. 2 at 256:17-19.) Plaintiff's exhibits one and two (hereinafter, "P1" and "P2") set forth Plaintiff's August 15, 2007 polygraph request. D1, P1, and P2—each dated August 15, 2007—have all been marked for identification in connection with Plaintiff's disciplinary hearing as "A19[.]" D6 identifies "A19" in the context of Plaintiff's disciplinary hearing as Plaintiff's request for polygraph. (See D6 at 2.) D1, P1, and P2 all reference Plaintiff's request for a polygraph examination. Plaintiff's exhibit four sets forth the Associate Administrator of Bayside's denial of Plaintiff's polygraph request.

39. On August 20, 2007, following the hearing, the disciplinary hearing officer found "substantial" evidence to conclude that Plaintiff violated *.002 (assaulting any person) by assaulting Defendant Officer Gandy. (D6 at 1, 4.)

40. In connection with the adjudication of Plaintiff's disciplinary charge, the correctional facility's file against Plaintiff included "A19 POLYGRAPH request" and "A21 POLYGRAPH denial[.]" (See id. at 2; see also D1 (Plaintiff's inmate remedy form dated August 15, 2007, bates-stamped "V.Jackson88" and identified as "A19"); P1 (Plaintiff's request for polygraph); P2 (Plaintiffs' request for polygraph).)

41. The "A19 POLYGRAPH request" is Plaintiff's inmate remedy form dated August 15, 2007.

42. The adjudication form concerning Plaintiff's disciplinary charge reflects that Plaintiff specifically stated that the Defendant Officers "punch[ed] and kick[ed]" him. [12] (D6 at 2.)

---

[12] Plaintiff specifically provided the following statement in connection with his disciplinary hearing:

Like I said in my report I was late taking my tray so Gandy trashed my room and took my tv. Next day he came in and while he was doing the count he got irate when I asked for my tv, and said I [f***ed] up. He called me out to the courtyard and said you want this tv and threw it on the ground and broke it. There were several witnesses, and I said I wanted a sergeant. [They came] in and said I'm bad and they are going to kick my ass and they will get away with it. I decided to not go to my cell and he hollered he would "kill you, n[...]". All I said was I wanted to see a sergeant. When he spit on me I slid in between the stairs and he started punching and kicking me and tried to drag me out and I kep[t] hollering I wanted a sergeant. Two other officers saw this and came over, and Gandy was trying to convince the other officers to get me. Another office Saduk started kicking me on the hand and the other one called in a code. They both started punching and kicking me and that's when the other officers came in. I gave SID witnesses and I think they were all moved here.

(Defendants' exhibit six at 2.)

11

43. The adjudication form further reflects that Plaintiff stated to his "counsel substitute" that "he didn't assault anybody" and that the Defendant Officers instead "assaulted him." (Id.)

d. **SID Investigation**

44. In addition to the administrative disciplinary hearing, SID's central office in Trenton conducted a contemporaneous investigation into Plaintiff's allegations of assault. (See Tr. Vol. 1 at 156:13-20, 159:2-15, 185:3-11; see also D6 at 1 (indicating the pendency of the SID investigation).)

45. A "specialized unit" in SID's central office in Trenton directly conducted the investigation. (Tr. Vol. 1 at 155:1-7, 161:22-162:25.)

46. In connection with the SID investigation, Kenneth Crotty (hereinafter, "Mr. Crotty"), an SID Senior Investigator, investigated Plaintiff's allegations of an assault by correction officers. (Id. at 156:1-159:18.)

47. Mr. Crotty also facilitated Plaintiff's request for a polygraph examination.[13] (Id.)

48. Mr. Crotty also authored a formal SID report, which he submitted to his "chief, Chuck Mueller." (Id. at 156: 22-24.)

49. SID did not, however, provide the results of this investigation to Plaintiff. (See id. at 185:11-25.)

The Prison Litigation Reform Act (hereinafter, the "PLRA") generally addresses litigation involving prison conditions, and specifically governs Plaintiff's grievances. See generally 42 U.S.C. § 1997(e)(a). The PLRA specifically provides that, "[n]o action shall be brought with respect to prison conditions under" 42 U.S.C. § 1983, "or any other Federal law, by a prisoner confined in any jail, prison, or other

---

[13] Plaintiff's exhibit six sets forth Plaintiff's request for a polygraph examination dated July 12, 2007 concerning "allegations of being assaulted[.]"

12

correctional facility until" the inmate litigation has "exhausted" all available "administrative remedies[.]" 42 U.S.C. § 1997e(a). In addition, the PLRA's exhaustion requirement "'applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.'" Jackson, 877 F. Supp. 2d at 174 (quoting Porter v. Nussle, 534 U.S. 516, 532 (2002)).

Under the PLRA, a prisoner must sufficiently exhaust all available administrative remedies prior to filing suit. 42 U.S.C. § 1997e(a); Woodford v. Ngo, 548 U.S. 81, 83–84 (2006); Nyhuis v. Reno, 204 F.3d 65, 66 (3d Cir. 2000). Exhaustion consequently "demands compliance with an agency's deadlines and other critical procedural rules because no adjunctive system can function effectively without imposing some orderly structure on the course of its proceedings." Woodford, 548 U.S. at 90-91. Such requirements "eliminate unwarranted federal-court interference with the administration of prisons, and thus seek[] to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" Id. at 93 (citation omitted). Exhaustion accordingly aims "'(1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the

13

inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits.'" Paladino v. Newsome, No. 12-2021, 2013 WL 3270987, at *5 (D.N.J. June 27, 2013) (quoting Atum-Ra v. Ortiz, No. 04-2711, 2006 WL 1675091, at *2 (D.N.J. June 14, 2006) (citing Spruill v. Gillis, 372 F.3d 218, 230 (3d Cir. 2004))), recons. granted in part on other grounds, 2013 WL 5161144 (D.N.J. Sept. 12, 2013). Exhaustion therefore constitutes a "'threshold issue'" the Court must address in determining whether Plaintiff's litigation "'is being conducted in the right forum [and] at the right time.'" Small v. Camden Cnty., 728 F.3d 265, 269-70 (3d Cir. 2013) (quoting Dillon v. Rogers, 596 F.3d 260, 271-72 (5th Cir. 2010)). However, exhaustion remains an "affirmative defense[.]" Jones v. Bock, 549 U.S. 199, 216 (2007). Consequently, inmates "are not required to specially plead or demonstrate exhaustion." Id. Rather, defendants bear the burden to demonstrate plaintiff's failure to exhaust. Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002) (joining "the many other circuits that have held that failure to exhaust is an affirmative defense to be pleaded by the defendant").

The New Jersey Administrative Code sets forth the exhaustion procedure relevant to this action.[14] See N.J.A.C.

---

[14] Notwithstanding the parties' dispute concerning the weight to be afforded the inmate handbooks introduced as exhibits by

10A:1-2.2, 10A:1-4.5, 10A:1-4.6, 10A:1-4.7. Specifically, the New Jersey Administrative Code requires that an inmate first file a "'Routine Inmate Request'" setting forth, with specificity, the inmate's concerns, and/or the inmate must first request an interview with "correctional facility staff" concerning the inmate's issues. N.J.A.C. 10A:1-4.5(a)(1)-(2). Correctional officers must within thirty (30) days thereafter "review and respond[.]" N.J.A.C. 10A:1-4.5(e). An inmate may then file an "Administrative Appeal" of the "response or finding received" in accordance with "th[is] initial step of the Inmate Remedy System. N.J.A.C. 10A:1-4.6(a). Ten business days after receipt of the "'Administrative Appeal[,]'" the "Administrator or designee" must review the appeal and render "a decision or finding[.]" N.J.A.C. 10A:1-4.6(c). The resultant "decision or finding" constitutes the "final level of review and decision or finding of the New Jersey Department of Corrections[,]" and derivatively, the final step in the formal exhaustion process. N.J.A.C. 10A:1-4.6(d).

Notwithstanding the requirements set forth in the New Jersey Administrative Code, courts have under certain

Defendants, the applicable provisions of the Administrative Code, as presently enacted, correspond with the testimony presented on March 7, 2014. Moreover, there is no dispute concerning the nature of the information set forth on Plaintiff's August 15, 2007 inmate remedy form. Any differences in the inmate remedy form therefore bear little significance to the resolution of the exhaustion issue.

circumstances relaxed the requirement to strictly comply with express exhaustion requirements.  Indeed, the PLRA only requires prisoners to exhaust "'available'" administrative remedies and an inmate need not exhaust an unattainable process. Brown v. Croak, 312 F.3d 109, 112-13 (3d Cir. 2002) (quoting Camp v. Brennan, 219 F.3d 279, 281 (3d Cir. 2000)). The Third Circuit has also addressed its "understanding that compliance with the administrative remedy scheme will be satisfactory if it is substantial." Nyhuis v. Reno, 204 F.3d 65, 77-78 (3d Cir. 2000); see also Spruill v. Gillis, 372 F.3d 218, 234 (3d Cir. 2004) (noting that the formal grievance process aims "to put the prison officials on notice of the persons claimed to be guilty of wrongdoing"). Some courts have correspondingly relaxed the strict compliance requirement, in favor of determining whether the non-compliant procedure utilized by the plaintiff satiated the essential purpose of the exhaustion process. See, e.g., Jenkins v. Hayman, No. 09-4989, 2013 WL 3201326, at *9 (D.N.J. June 24, 2013) (finding the exhaustion requirement satisfied, and denying defendants' motion for summary judgment).

In light of the record before the Court, the Court concludes that Plaintiff's presentment of his assault allegations in the context of his disciplinary hearing satisfies the exhaustion requirement. The requirement of full exhaustion prior to proceeding with federal litigation aims to provide: (1)

16

prison officials with sufficient notice concerning the nature of the inmate's grievance; (2) the latitude to timely gather and preserve relevant evidence; and (3) "a fair opportunity to consider the grievance." Woodford, 548 U.S. at 95; see also Spruill, 372 F.3d at 234 (noting that the purpose of the prison's grievance process "is to put the prison officials on notice of the persons claimed to be guilty of wrongdoing"). Moreover, in the absence of express compliance with applicable administrative remedies, "substantial" compliance with the purposes underpinning the exhaustion requirement suffices. Nyhuis, 204 F.3d at 77-78. In that regard, the Court finds Jenkins v. Hayman, No. 09-4989, 2013 WL 3201326 (D.N.J. June 24, 2013) instructive.

In Jenkins, the court considered whether plaintiff exhausted the inmate remedy system with respect to a July 9, 2008 incident giving rise to plaintiff's claims of excessive force, failure to protect, and retaliation. Id. at *8. Plaintiff filed a number of inmate remedy forms from August 2008 through September 2009; none, however, involved the claims set forth in plaintiff's complaint. Id. (noting that plaintiff "did not file a single inmate remedy form regarding his allegations of excessive force, failure to protect and retaliation stemming from the July 9, 2008 incident"). Notwithstanding plaintiff's failure to file inmate remedy forms concerning the specific

claims giving rise to the litigation, the <u>Jenkins</u> court concluded that plaintiff had properly satisfied the exhaustion requirement by bringing his grievances to defendants' attention through his "vigorous[] challenge[]" of the prison disciplinary charges filed against him, at which time plaintiff asserted claims of "excessive force, failure to protect and retaliation[.]" <u>Id.</u> at *8. The district court therefore concluded that plaintiff's participation in the disciplinary process (and related disciplinary appeal) collectively afforded New Jersey state prison officials "the time and opportunity to address [p]laintiff's complaints internally," prior to proceeding with plaintiff's federal litigation. <u>Id.</u> at *9. The <u>Jenkins</u> court accordingly found "the purposes underlying the exhaustion requirement" satisfied, and denied defendants' motion for summary judgment on the grounds of non-exhaustion. <u>Id.</u>

Here, Plaintiff amply presented the *specific* assault allegations giving rise to this litigation in the context of the Plaintiff's disciplinary proceeding. (<u>See</u>, <u>e.g.</u>, D6 at 2 (setting forth, with specificity, Plaintiff's claim that officers assaulted him).) Plaintiff not only set forth his assault allegations in connection with his inmate remedy form, he also provided a detailed statement to the disciplinary hearing officer concerning the assault allegations set forth in Plaintiff's complaint. (<u>Compare</u> D1 (noting that Plaintiff

"claims he was assaulted"); D6 at 2 (setting forth Plaintiff's detailed allegations concerning Defendants' alleged assault), with Complaint [Doc. No. 1], 7-8 on the docket (setting forth nearly identical allegations).) The Bayside administration further received express notification of Plaintiff's allegations in connection with Plaintiff's request for a polygraph examination *and* the adjudication of Plaintiff's disciplinary charge. (See P1 and P2 (referencing appended "related evidence" concerning Plaintiff's disciplinary charge to Bayside Administration in furtherance of Plaintiff's request for polygraph; D6 at 4 (referring Plaintiff's disciplinary adjudication report to prison administration concerning sanctions). Consequently, prison administration remained clearly apprised of Plaintiff's *active* challenge to his disciplinary charges on the basis that Plaintiff asserted that he had been assaulted. The Court notes that the N.J. Administrative Code specifically provides that, the "disciplinary hearing within a correctional facility shall be conducted by either a Disciplinary Hearing Officer designated by the Commissioner or a Committee of three staff members designated by the Administrator." N.J.A.C. 10A:4-8.1. In accordance with the Administrative Code, disciplinary hearings primarily occur at the behest and designation of prison administration. The Court therefore concludes that Plaintiff "substantial[ly]" complied

with the purposes underpinning the exhaustion requirement.
Nyhuis, 204 F.3d at 77-78; Jenkins, 2013 WL 3201326, at *9
(finding plaintiff's participation in a disciplinary proceeding
satisfied the essential purposes of exhaustion).[15]

_____

[15] The Court also notes that the PLRA only requires prisoners to
exhaust "'available'" administrative remedies. Brown v. Croak,
312 F.3d 109, 112-13 (3d Cir. 2002) (quoting Camp v. Brennan,
219 F.3d 279, 281 (3d Cir. 2000)). Here, the testimony clearly
reflected that a prison official may return an inmate remedy
form without action or may disregard an inmate remedy form where
the prison administration deems the substance of the inmate
remedy form inappropriate for review in the context of the
inmate remedy system. (See, e.g., Tr. Vol. v.1 79:23-80:24,
100:6-19, 123:10-129:10.) Mr. Dutch, for example, testified that
certain inmates "circumvent[] the system" by improperly
depositing their inmate remedy forms in a location other than
the repository designated for receipt of inmate remedy forms.
(Id. at 78:1-81:3.) In such a scenario, Mr. Dutch stated that
the administration would deem the process invalid and reject the
inmate remedy form, without notice to the inmate. (Id. at 79:23-
80:24.) Ms. Phillips similarly testified that certain inmate
remedy forms may be "disregarded[.]" (Id. at 100:9-11.) Ms.
Phillips then concluded that Plaintiff's request for a polygraph
examination constituted sufficient "justification" to "bounce[]"
or to entirely disregard Plaintiff's inmate remedy form, and
that Plaintiff's inmate remedy form facially reflected such
treatment. (Id. at 125:15-129:7.) In light of Court's conclusion
with respect to Plaintiff's presentment of his allegations in
the context of the disciplinary hearing, the Court need not rule
on whether the inmate remedy system was unavailable to Plaintiff
to a degree sufficient to excuse exhaustion. See Brown, 312 F.3d
at 113 (citation omitted) (noting that availability in the
exhaustion context accordingly requires that the administrative
remedies be "'capable of use'" and "'at hand'"); Oliver v.
Moore, 145 Fed. Appx 731, 735 (3d Cir. 2005) ("An administrative
remedy may be found to be unavailable where a prisoner is
prevented by prison authorities from pursuing the prison
grievance process.") (citations omitted); Lugo-Vazquez v.
Grondolsky, No. 08-986, 2009 WL 2004392, at *3 (D.N.J. July 1,
2009) (noting that, "courts within and outside this Circuit have
recognized that where the prison fails meaningfully to address
the merits of an inmate's grievance, the remedy process may be

Consequently, for the reasons set forth herein, and for good cause shown:

IT IS on this 29th day of September 2014,

**ORDERED** and **ADJUDGED** that Defendants' request to dismiss this action for failure to exhaust shall be, and is hereby, <u>**DENIED**</u>; and it is further

**ORDERED** that this action shall proceed to trial on all remaining issues on a date to be set by the Court.


<u>s/ Ann Marie Donio</u>
ANN MARIE DONIO
UNITED STATES MAGISTRATE JUDGE

---

found to be unavailable for PLRA purposes[]") (citations omitted).