# B. David Jarashow

**Attorney at Law**
**31 West Main Street – 2nd floor**
**Freehold, New Jersey 07728**

**Tel. 732-303-6330**
**Fax 732-909-2079**

Hon. Ann Marie Donio, U.S.M.J.
Mitchell H. Cohen Building & U.S. Courthouse
4th & Cooper Streets
Camden, NJ 08101

November 19, 2014

**Re: Jackson v. Gandy et als - Civil Action # 09-1141 (AMD)**

Dear Judge Donio:

      This office, along with Steven Gabor, Esq., represents Plaintiff Vince Jackson in the above matter.   Kindly accept this letter brief in lieu of a more formal brief in opposition to Defendants' Motion *In Limine*.  The Court should note that we have reviewed Defendants' "Preliminary Statement" on the in limine matters, and confirm that they have accurately stated the issues that have been resolved between the parties thus far.

### PLAINTIFF'S COUNTER-ARGUMENT TO DEFENDANT'S REQUEST TO LIMIT TESTIMONY CONCERNING RACIAL ANIMUS AND/OR REACIAL DISCRIMINATION

      Plaintiff's *pro se* filing should not be used as a basis to limit testimony concerning the racial animus of the named defendants.   By not specifically pleading a cause of action grounded in racial animus, plaintiff did not give up his right to testify or have his witnesses testify about the racially charged insults directed at him at the time of the incident.   Allowing testimony of

the use of racial slurs by the defendants at this specific time, does not obscure the fact that this is still an excessive force case. However, it is submitted that by allowing this kind of testimony, it will assist the jury in regard to making a determination of whether excessive force was used. Most importantly, the jury is free to either consider it or not, but it should not be excluded at the risk that the jury may think that the incident occurred in a sterile vacuum.

Contrary to the State's assertion that "discovery has failed to produce or provide any evidence of racial animus" the deposition transcripts of three witnesses and the plaintiff are replete with references to racial slurs being used by Officer Gandy and the others as the incident unfolded. At Page 31, Line 4-5, Shereef Telefaire testifies that he heard the officers use a racial slur at the time of the incident and he further repeats his testimony at Page 60, Line 16. (See Exhibit A)

Similarly, Kevin Williams testified at his deposition that plaintiff was called a racial slur at the time of the incident. (Exhibit B - 31:15, 34:23).

In plaintiff's deposition he testifies that racial slurs were directed at him as part of the incident (Exhibit C - 10:13, 22:6, 23:10-11, 23:25, 25:1 and 41:12).

Lastly, in Jeffrey Johnson's deposition, he speaks to Gandy's frequent us of racial slurs generally (Exhibit D - 17:9-10, 17:14, 17:21 and 22:14) and specifically at the time of the incident (22:25).

**PLAINTIFF'S COUNTER-ARGUMENT TO DEFENDANT'S REQUEST TO LIMIT EVIDENCE, TESTIMONY OR ARGUMENT ABOUT ANY PRIOR OR POST INCIDENT COMPLAINTS, DISCIPLINARY ACTIONS AND/OR INTERNAL INVESTIGATIONS INVOLVING THE DEFENDANT OFFICERS**

Under the Federal Rules of Evidence, "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person

acted in accordance with the character." Fed. R. Evid. 404(b)(1). However, such evidence **"may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."** Id. 404(b)(2). (Emphasis Added).  Before admitting such evidence, the Court must consider: (1) whether it is logically relevant to any material issue other than propensity to commit bad acts, and (2) whether, pursuant to Rule 403, its probative value is substantially outweighed by its prejudicial effect. *U.S. v. Sampson*, 980 F.2d 883, 886 (3d Cir. 1992). The Court "has 'considerable leeway'" in making that determination. Id. Indeed, as the Court of Appeals recently held, Rule 404(b) "is inclusive, not exclusive, and emphasizes admissibility." *U.S. v. DeMuro*, 677 F.3d 550, 563 (3d Cir. 2012) (internal citation omitted).

Plaintiff has agreed to jettison documents with respect to any **subsequent** acts of the Defendants as well as the domestic violence documents regarding Defendant Gandy.  We have tried to be reasonable in connection with this issue, and to respect the prior rulings made by the Court, particularly with respect to post incident SID reports.  That said, if Defendants have a *prior* history of being involved in an assault on an inmate at the same institution that Plaintiff alleges he was assaulted, it is highly probative of a *modus operandi*.

At the end of the day, once we separate out the individual exhibits, as the Court requested during the recent logistics conference, the Defendants will again have an opportunity to object to specific SID reports or other documents.  Furthermore, a jury instruction explaining the limited purpose for which the evidence is admissible will minimize any prejudicial effect of the evidence. *See U.S. v. Daraio,* 445 F.3d 253, 265 (3d Cir. 2006). Thus, because the probative value of the evidence of Defendants' prior history is not substantially outweighed by its prejudicial effect, the Court should find that such proposed evidence is admissible.

The Motion *In Limine* regarding information on the Defendants prior conduct should be denied at this time. Again, plaintiff concedes this point regarding post-incident reports and testimony.

**PLAINTIFF'S COUNTER-ARGUMENT TO DEFENDANT'S REQUEST TO LIMIT TESTIMONY, EVIDENCE OR ARGUMENT THAT SEEKS TO AND/OR WOULD BE INCONSISTENT WITH OR CONTRADICT THE DISCIPLINARY FINDINGS REGARDING PLAINTIFF AND THIS INCIDENT**

As the Court stated in the Order dated June 29, 2012 regarding Defendants' Motion for Summary Judgement, Plaintiff may be allowed to pursue his excessive force claims as long as they are not inconsistent with his disciplinary decision. (Doc. # 84, P. 19) (Citing *Giudice v County of Atl*. No. 07-1143, 2008 U.S. Dist. LEXIS 92930 (D.N.J. Nov. 13, 2008))

At the time the Order was entered, the Court had not yet found that Plaintiff had, in fact, exhausted his administrative remedies. Accordingly, the Court should now review this issue keeping in mind the finding that Plaintiff exhausted his administrative remedies regarding the July 9, 2007 incident ("the incident").

With respect to Defendants argument that Plaintiff should be barred from testifying in a manner that would conflict with his prison disciplinary charges, aside from the fact that Plaintiff has vigorously and continuously disputed these charges, during the incident there was a point when Plaintiff retreated down a flight of stairs and no longer presented a safety and security threat to the officers or other inmates.

Plaintiff's written statement to SID, given just a few hours after being assaulted by Defendants and other corrections officers indicates "I didn't assault anyone. I held onto the gate [in the storage area that Plaintiff retreated to] until the Sgt. Came." (Exhibit E, p.1 lines 15-16). This is consistent with SID Senior Investigator Carol Steward's interview of Plaintiff on the night of the incident. The SID report reflects that "Inmate Jackson claimed that he hid under the

stairwell in an attempt to protect himself from continued assault [by Defendants Gandy and Saduk]. (Exhibit F – p.2 par. 2). Even Defendant Saduk corroborates that Jackson retreated. According to the SID report, "SCO Saduk indicated that Inmate Jackson then ran under the stairwell and that SCO Gandy pursued him." (Id. – p.7, par. 1)

The underlying incident can be broken down into two parts. The first part being the initial assault between Plaintiff and Defendant Gandy, the second part being the assault on Plaintiff after he retreated down a flight of stairs and into a storage area in which the SID report reflects the following:

> **If no Staff member had been under the stairwell with Inmate Jackson then the metal gate could have been slid shut and Inmate Jackson would have had access to only the locked down tier where he would have been secured until Staff responded. At said point Staff could have utilized mechanical force (OC) or taken appropriate action utilizing protective gear in the event Inmate Jackson refused to surrender**.

(Id. – p.8, par. 8)

Additionally, Plaintiff's pro-se Complaint specifically states that after Defendants Gandy and Saduk put on gloves [in preparation to assault Plaintiff] and threatened to "kill his black ass", "Mr. Jackson then fled under the day room staircase." (Doc. # 1, p.7).

In *Green v. Chvala*, No. 13 C 3568, 2014 WL 2925182, at 3 (7th Cir. Jun. 30, 2014) (Exhibit G))., admittedly a nonprecedential decision from another circuit, the Seventh Circuit found that a Plaintiff's excessive force claims were compatible with *Heck v. Humphrey,* 512 U.S. 477 (1994). In *Green* the Plaintiff's claim against a law enforcement officer was allowed to proceed because Plaintiff alleged that the officer used excessive force **before** the conduct that led to his conviction (for reckless driving). The Plaintiff in *Green* alleged that the officer fired his

gun at him as he slowly drove past the officer. It was only **after** this excessive force was used that Plaintiff sped away recklessly.

The *Green* Court ruled that *Heck* does not bar such a claim because, if it did, **then resistance that did not jeopardize safety**, such as the low-speed driving that the plaintiff described, **would invite the police to inflict any reaction or retribution they choose.**

It is unclear from Plaintiff's disciplinary decision whether he was punished for his conduct after he retreated down the stairs and into a storage area. Regardless, if this is the case, Plaintiff should be allowed to testify about this part of the incident without any restrictions. Furthermore, Plaintiff's disciplinary charges and punishment should be attributed to his conduct before he retreated only. Plaintiff fled Defendants Gandy and Saduk. His resistance once under the stairwell, if any, did not jeopardize safety as reflected in the SID report. Accordingly, Plaintiff should be allowed to testify that he spent additional time in prison, despite the fact that he retreated from correction officers, in order to avoid being assaulted. Plaintiff asserts that such testimony is compatible with *Hale*.

**PLAINTIFF'S COUNTERARGUMENT TO LIMIT CERTAIN MEDICAL TESTIMONY**

Plaintiff respectfully refers the Court to the prior discussion of the effect of the findings of the disciplinary hearing. Suffice to say it would be difficult and cumbersome to limit Dr. Crain's testimony concerning the effects of plaintiff's increased period of incarceration as it may not be practical attempt to try to filter this out.

**BAR OR EXCLUDE TESTIMONY, EVIDENCE, ARGUMENT OR ANY REFERENCE TO DEFENDANT GANDY'S ALLEGED PHYSICALLY ABUSIVE PAST**

Based on feedback from the Court over the course of this case, Plaintiff agrees not to raise the issue of Defendant Gandy's domestic violence arrest and related matters from July 2001 involving his ex-wife, Brittany Hill.

**BAR ANY TESTIMONY OR EVIDENCE THAT PLAINTIFF WAS, AT ANY PERIOD OF TIME WHILE INCARCERATED, A "SPECIAL NEEDS" INMATE**

Plaintiff agrees not to raise the issue.

### PLAINTIFF'S COUNTERARGUMENT WITH REGARD TO TESTIMONY CONCERNING OTHER CORRECTIONAL OFFICERS ASSAULTING PLAINTIFF.

Plaintiff does not seek to impose liability on officers other than Gandy, Saduk or Roman, but instead would want the jury to hear testimony that others aside from them were actively involved in the incident. If the defendants were to prevail in their argument, it would appear that Gandy, Saduk and Roman were the only officers involved, which would not paint an accurate picture for the jury. It is more accurate to allow him to testify that Gandy, Saduk and Roman were the only officers who he could identify.

### PLAINTIFF'S COUNTERARGUMENT WITH REGARD TO TESTIMONY OF CERTAIN OF THE INDIVIDUALS IDENTIFIED BY PLAINTIFF AS WITNESSES IN THIS MATTER

With respect to the proposed "inmate witnesses", Plaintiff advised Defendants' counsel that we intend to call only the three inmate witnesses whose depositions were take: Shereef Telfaire (Plaintiff's cellmate at Bayside Prison); Jeffrey Johnson (an eyewitness to the destruction of Plaintiff's television by Defendant Gandy, and eye witness/ear witness to the events leading up to and including the incident in question); Kevin Williams (eye witness/ear witness to the incident in question).

As far as the addresses of these respective witnesses is concerned, an issue raised by Defendants, Mr. Telfaire was released from NJDOC custody recently. While Defendants would be in the best position to know the last known address of Mr. Telfaire, and we request same by copy of this letter, we will endeavor to locate his current address and provide this information to Defendants' counsel as soon as possible.

As discussed at the logistics conference, our understanding is that Kevin Williams is in custody at Monmouth County Correctional Institute. The address is 1 Waterworks Road, Freehold, New Jersey 07728.

Jeffrey Johnson is not in custody and is living in New Jersey. Again, we will endeavor to locate his current address and provide this information to Defendants' counsel as soon as possible.

With respect to Defendants objection to Mr. Telfaire testifying about the video cameras at Bayside, a review of Mr. Telfaire's deposition transcript reflects that his testimony is simply about his advising Plaintiff to try to address a Sargent at the "center" about the television that Defendant Gandy had confiscated so that cameras would records Plaintiff's actions. Telfaire does not discuss that other cameras may or may not be working, he simply advises Mr. Jackson that the center, the hub of activity at the prison, would be a good location to seek to remedy the issue.

Each of these three proposed witnesses gave deposition testimony, and Defendants' counsel took advantage of their opportunity to cross-examine each of them. Accordingly, there should be little doubt about what each witness is being called to testify about in connection with this matter.

We have made a concerted effort to limit the witnesses in this matter, however, these three witnesses are critical to Plaintiff's case. Each had a different vantage point during the incident in question and each can corroborate various parts of Plaintiff's testimony. Accordingly, the Court should deny Defendants' motion to exclude the testimony of Shereef Telfaire, Jeffrey Johnson and Kevin Williams.

**ADMINISTRATORS**

With respect to Administrators, Plaintiff agrees to eliminate all but the following potential witness: Evelyn Davis, former administrator of Bayside. Ms. Davis may have information about an employment action against Defendant Gandy as well as information about his termination or retirement from the NJDOC. Furthermore, Plaintiff intends to call her in connection with "her experience while at Bayside State Prison…[and] about the Administrator's File and any information on Defendants in said file." (As stated in the pre-trial order).

Plaintiff has limited the witnesses in this category to one administrator, accordingly, Defendant's Motion should be denied with respect to Ms. Davis.

**POLYGRAPHIST AND COURTLINE OFFICERS**

Plaintiff agrees not to call any of these proposed witnesses with the exception of Kathy Ireland who was engaged in several written communications about getting Plaintiff's court line hearing completed in an expeditious manner.

**INVESTIGATORS**

With respect to the SID investigators, Plaintiff agrees to limit these witnesses to Investigators Kenneth Crotty and Carol Steward, who were involved in the investigation of the

incident[1].  Any testimony from these investigators would not be duplicative and cumulative.  Significant distinction can be made as to each witness's contribution to the final report as follows:

> -Investigator Crotty wrote the final SID report and went to Bayside Prison immediately following the incident.  On July 10, 2007 he and investigator Steward searched the trash of F Unit and uncovered "thick discolored glass, which appeared to be from a tv screen."  On July 11, 2007 he toured the area under the stairwell where the incident occurred.  He took various witness statements, including a follow up interview with Plaintiff on July 12, 2007.  (See Exhibit F).
>
> -Investigator Steward was the investigator who first interviewed Plaintiff after the incident.  Among other things, she is the person who discovered the broken glass in the trash can and entered said glass into SID evidence. (Id.)

**MEDICAL STAFF**

With respect to medical and nursing staff (aside from experts), Plaintiff agrees to limit the witnesses to the following: Nurse Gottwald, Bayside prison (listed by Defendants, examined Plaintiff on night of incident); Nurse Pepitone, Southwoods Prison (listed by Defendants, examined Plaintiff on night of incident); Nurse Shortencarrier, Southwoods Prison (reported that Plaintiff was lying in supine position on morning following incident); and Dr. Saif, Southwoods Prison (ordered Plaintiff to be taken to hospital on morning following the incident).

Each of the above professionals had different involvement with Plaintiff in connection with the incident.  Accordingly, each of these proposed witnesses should be allowed to testify, if called.

**BRITTANY HILL AND RUBY JACKSON**

---

[1] Plaintiff notes that investigators Rossi and Stolys were with Investigator Crotty during the interview of several corrections staff witnesses.  Plaintiff would only call one of these investigators if Investigator Crotty were unable to be called at time of trial.

With respect to Brittany Hill, Defendant Gandy's ex-wife, Plaintiff has agreed not to call her.  However, Plaintiff's mother, Ruby Jackson should be allowed to testify since she called the Ombudsman's office numerous times once she learned that her son had been assaulted, and was prevented from seeing him for weeks thereafter.  When Ms. Jackson ultimately did see Plaintiff, she spoke with him about the incident and observed his appearance.  She should be allowed to discuss her interaction with the Ombudsman's office and he personal observations of her son's physical, mental and emotional condition after the incident and after his release from prison

**BAR ANY TESTIMONY ABOUT OR DOCUMENTS CONCERNING THE INCIDENT OF MARCH 29, 2010 AND THE SID REPORTS OF MAY 18 AND JUNE 8, 2011 AND THE INDIVIDUALS NAMED IN CONJUNCTION THEREWITH AS WITNESSES**

Plaintiff has already conceded that he will not raise any such issues after the incident.

**PLAINTIFF'S COUNTERARGUMENT WITH
REGARD TO TESTIMONY OF DEFENDANTS REQUEST THAT THE COURT INSTRUCT THE JURY, PRIOR TO OPENINGS IN THE CASE, THAT THEY MUST FIND AND ACCEPT, AS A MATTER OF LAW, THAT PLAINTIFF DID IN FACT ASSAULT ANY PERSON; PLAINTIFF DID ENGAGE IN CONDUCT THAT DISRUPTS OR INTERFERES WITH THE ORDERLY RUNNING OF THE CORRECTIONAL FACILITY; AND THAT PLAINTIFF DID ENGAGE IN CONDUCT THAT INTERFERED WITH THE TAKING OF A COUNT.**

Plaintiff asserts that an in limine motion is not the appropriate manner in which to address the above jury instructions.  During the November 6, 2014 logistics conference, the parties were given direction on where to find examples of the Court's prior jury charges in a similar matter.  Plaintiff respectfully requests that the Court reserve decision on this issue until such time as the parties have had an opportunity to fully review the jury charges in the similar matter.

For the reasons stated above, Plaintiff requests that the contested issues regarding Defendants' Motion *In Limine* by denied.

Respectfully submitted,

/s/ *B. David Jarashow*