IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

VINCE JACKSON,

              Plaintiff,                    Civil No. 09-1141 (AMD)

      v.

E. GANDY, et al.,

              Defendants.

## ORDER

In this civil rights litigation, Defendant Officers E. Gandy, A. Saduk, and Roman (hereinafter, "Defendants") assert that Plaintiff Vince Jackson (hereinafter, "Plaintiff") failed to exhaust the requirements of New Jersey's inmate remedy system, N.J.A.C. § 10A:1-4.1 to -4.9 (hereinafter, the "inmate remedy system") as required by the Prison Litigation Reform Act (hereinafter, the "PLRA"), 42 U.S.C. § 1997e(a). For the reasons set forth herein, the Court finds that the remedy in this case was not "available," and, therefore, Plaintiff was not required to exhaust the administrative remedy.

The exhaustion issue in this case has a lengthy procedural history. Defendants raised the issue previously by way of motion for summary judgment asserting that Plaintiff's failure to exhaust administrative remedies precluded his claim. (Motion for Summary Judgment [D.I. 58].) By Opinion dated June 29, 2012

1

the Court held that Defendants had failed to meet their burden on the issue of exhaustion, and denied Defendants' motion for summary judgment without prejudice with respect to Defendants' exhaustion defense. See Jackson v. Gandy, 877 F. Supp. 2d 159, 178-179 (D.N.J. 2012). On January 6, 2014, Defendants moved to conduct a bifurcated trial concerning the exhaustion issue. (See Motion to Bifurcate [D.I. 156], 1-3.) By Order dated January 15, 2014, the Court granted Defendants' motion for a bifurcated trial on this issue. (Order [D.I. 164], Jan. 15, 2014, 4.) The Court conducted a two-day trial without jury on the issue of exhaustion on March 7, 2014 and March 10, 2014, at which time a number of individuals testified concerning the issue of exhaustion. On September 29, 2014, the Court issued an Opinion making factual findings and holding that Plaintiff satisfied the exhaustion requirement by substantially complying with the requirements of the state inmate remedy system. (Memorandum Opinion and Order [D.I. 183], Sept. 29, 2014, 5-12, 19-20.) Following the Court's Opinion, a trial was set for January 25, 2016. On December 23, 2015, however, Defendants submitted a motion to stay the trial in light of the United State Supreme Court's grant of *certiorari* to consider whether the Fourth Circuit in Blake v. Ross, 787 F.3d 693 (4th Cir. 2015) misapplied a "special circumstances" exception to the PLRA exhaustion requirement. (Motion to Stay [D.I. 236], 1-2). The Court adjourned the January 25, 2016 trial pending resolution of the motion and on

January 28, 2016 granted Defendants' motion to stay the trial pending the Supreme Court's decision in Blake.

On June 6, 2016, the United States Supreme Court in Ross v. Blake rejected the Fourth Circuit's "'special circumstances'" exception to the exhaustion requirement of the PLRA. Ross v. Blake, 136 S. Ct. 1850, 1856 (2016) (quoting Blake v. Ross, 787 F.3d 693, 698 (4th Cir. 2015)). The Supreme Court in Blake held that the only exception to the exhaustion requirement of the PLRA is the one "baked into its text:" that an inmate need only exhaust such remedies as are "available." Id. at 1862. Thereafter, the Court requested position papers from the parties concerning the decision's effect on the exhaustion issue in the instant matter. (See Text Order [D.I. 252], June 8, 2016.) In their submissions, all parties agreed that, after Blake, substantial compliance is insufficient to satisfy the PLRA's exhaustion requirement, and that the relevant issue is whether the inmate remedy system constituted an "available" remedy in this case. (See generally Defendants' Position Paper [D.I. 255]; Plaintiff's Position Paper [D.I. 256].) Defendants assert, however, that the textual exception that only "available" remedies must be exhausted does not apply in this case because none of the circumstances where an administrative remedy is deemed unavailable are present in the facts of this case. (Defendants' Position Paper [D.I. 255], 2-3.) Plaintiff, by contrast, argues that by failing to respond to

Plaintiff's inmate remedy form, prison officials prevented Plaintiff from exhausting the administrative remedy and that, therefore, the remedy was not "available." (See generally Plaintiff's Position Paper [D.I. 256], 1-4.) On August 26, 2016, the Court dissolved the stay of this matter. (Order [D.I. 258].) On June 27, 2017, the Court held a telephone conference with all parties and granted leave to file additional submissions by July 10, 2017. On July 10, 2017, Plaintiff submitted an additional letter brief for the Court's consideration. (See Plaintiff's Letter Brief [D.I. 263].) Accordingly, the Court now considers whether the inmate remedy system in this case was "available" to Plaintiff.

The Prison Litigation Reform Act generally addresses litigation involving prison conditions and specifically governs Plaintiff's grievances. See generally 42 U.S.C. § 1997e(a). The PLRA specifically provides that, "[n]o action shall be brought with respect to prison conditions under" 42 U.S.C. § 1983, "or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until" the inmate litigant has "exhausted" all available "administrative remedies[.]" 42 U.S.C. § 1997e(a). The PLRA's exhaustion requirement "'applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.'" Jackson v. Gandy, 877 F.

4

Supp. 2d 159, 174 (D.N.J. 2012) (quoting Porter v. Nussle, 534 U.S. 516, 532 (2002)).

Under the PLRA, a prisoner must sufficiently exhaust all available administrative remedies prior to filing suit. 42 U.S.C. § 1997e(a); Woodford v. Ngo, 548 U.S. 81, 83–84 (2006); Nyhuis v. Reno, 204 F.3d 65, 66 (3d Cir. 2000). Exhaustion consequently "demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Woodford, 548 U.S. at 90–91. Such requirements "eliminate unwarranted federal-court interference with the administration of prisons, and thus seek[] to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" Id. at 93 (citation omitted). Exhaustion accordingly aims "'(1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits.'" Paladino v. Newsome, No. 12-2021, 2013 WL 3270987, at *5 (D.N.J. June 27, 2013), recons. granted in part on other grounds, 2013 WL 5161144 (D.N.J. Sept. 12, 2013) (quoting Atum-Ra v. Ortiz, No. 04-2711, 2006 WL 1675091, at *2 (D.N.J. June 14, 2006)). Exhaustion

therefore constitutes "a precondition for bringing suit under §
1983" and a "'threshold issue'" the Court must address in
determining whether Plaintiff's litigation "'is being conducted in
the right forum [and] at the right time.'" Small v. Camden Cnty.,
728 F.3d 265, 269-70 (3d Cir. 2013) (quoting Dillon v. Rogers, 596
F.3d 260, 271-72 (5th Cir. 2010)). However, failure to exhaust
remains an "affirmative defense[.]" Jones v. Bock, 549 U.S. 199,
216 (2007). Consequently, inmates "are not required to specially
plead or demonstrate exhaustion[.]" Id. Rather, defendants bear
the burden to demonstrate plaintiff's failure to exhaust. Ray v.
Kertes, 285 F.3d 287, 295 (3d Cir. 2002) (joining "the many other
circuits that have held that failure to exhaust is an affirmative
defense to be pleaded by the defendant[]").

The Court previously had occasion to set forth the state
administrative procedure for the inmate remedy system at issue in
this case:

> The New Jersey Administrative Code sets forth
> the exhaustion procedure relevant to this
> action. See N.J.A.C. § 10A:1-2.2, 10A:1-4.5,
> 10A:1-4.6, 10A:1-4.7. Specifically, the New
> Jersey Administrative Code requires that an
> inmate first file a "'Routine Inmate Request'"
> setting forth, with specificity, the inmate's
> concerns, and/or the inmate must first request
> an interview with "correctional facility
> staff" concerning the inmate's issues.
> N.J.A.C. 10A:1-4.5(a)(1)-(2). Correctional
> officers must within thirty (30) days
> thereafter "review and respond[.]" N.J.A.C.
> 10A:1-4.5(e). An inmate may then file an
> "Administrative Appeal" of the "response or

> finding received" in accordance with "th[is]
> initial step of the Inmate Remedy System.
> N.J.A.C. 10A:1-4.6(a). Ten business days after
> receipt of the "'Administrative Appeal[,]'"
> the "Administrator or designee" must review
> the appeal and render "a decision or
> finding[.]" N.J.A.C. 10A:1-4.6(c). The
> resultant "decision or finding" constitutes
> the "final level of review and decision or
> finding of the New Jersey Department of
> Corrections[,]" and derivatively, the final
> step in the formal exhaustion process.
> N.J.A.C. 10A:1-4.6(d).

(Opinion [D.I. 183], Sept. 29, 2014, 14-15) (footnote omitted).[1]

The PLRA only requires prisoners to exhaust "available" administrative remedies. Blake, 136 S. Ct. at 1858. An administrative remedy is available in the exhaustion context if it is "'capable of use for the accomplishment of a purpose'" and "'is accessible or may be obtained'". Id. (citation omitted). Administrative remedies however are unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1860. In this regard, the Third Circuit has held that where prison officials have failed to respond to a prisoner's complaint, and the "procedures did not contemplate an appeal from a non-decision," the administrative remedy is no longer available to

---

[1] These regulations are not identical to the current regulations which were amended in 2015. These are, however, the regulations that the Court previously found relevant to the exhaustion issue in its prior opinion. See id. at 14 n.14.

him. *Small*, 728 F.3d at 273.[2] See also *Robinson v. Superintendent Rockview SCI*, 831 F.3d 148, 154 (3d. Cir. 2016) (holding that, consistent with *Small*, prison officials rendered plaintiff's administrative remedies unavailable when they failed to timely respond to his grievance and then ignored his follow-up requests for a decision on the complaint); *Bond v. Horne*, 553 F. App'x 219, 222 (3d Cir. 2014) (applying *Small* and concluding that, because plaintiff never received a decision on his second level of appeal, the remedy was not available). Cf. *Basemore v. Vihildal*, 605 F. App'x 105, 109 n.6 (3d. Cir. 2015) (holding that, unlike in *Small*, plaintiff did receive a response to his grievances and therefore the administrative remedies were available) (citing *Small*, 728 F.3d at 273). Most recently, the District Court in *Romero v. Ahsan*, relying upon the Third Circuit's decision in *Small*, concluded that the New Jersey's inmate remedy system similarly "does not provide for the appeal of non-decisions, [but] only of adverse determinations." *Romero v. Ahsan*, No. 13-7695, 2016 WL 7424486, at

---

[2] An opposite result might be reached if the administrative procedures provide a process for appeal upon a non-decision. See, *Gambino v. Fed. Corr. Inst.-McKean*, No. 14-CV-236, 2017 WL 1190498, at *6 (W.D. Pa. Mar. 31, 2017)(finding that a non-response did not excuse the obligation to exhaust remedies in light of regulations providing procedures for exhausting claims when a complaint is "not timely responded to by the government")(citing 28 C.F.R. § 542.14(d)(1)). Defendants have offered no evidence to support a finding that the inmate remedy system has a parallel procedure, in the event of a governmental failure to timely respond.

*8 (D.N.J Dec. 22, 2016) (citing N.J.A.C. § 10A:1-4.6(a)).[3] In Romero, the District Court concluded that it did not have a sufficient record to make the determination, and further found that "if this [c]ourt were to find that [p]laintiff [filed the grievances] ... [and] did not receive responses to those complaints, the [c]ourt could find that the [inmate remedy system] grievance process was not legally 'available' to [p]laintiff, excusing his failure to exhaust administrative remedies." Id.

Failure of the prison to respond to an inmate's request makes the remedy unavailable when the complaint was filed properly according to the relevant administrative procedures. See Small, 728 F.3d at 273, 273 n.8. In Small, as noted supra, the Third Circuit held that the District Court had improperly dismissed grievances for failure to file an appeal when prison officials did not respond to the complaint; however, the Small court also noted that dismissal of other grievances was proper, notwithstanding the failure of prison officials to respond, because the grievances

---

[3] The Court notes that, despite the amendments to the regulations in 2015, the language which the Court in Romero highlighted to support this finding is identical to the language of the prior regulations. Compare id. ("An inmate may appeal *a response or finding received* after exhausting the second step of the Inmate Remedy System as indicated in N.J.A.C. 10A:1-4.5 above")(quoting N.J.A.C. § 10A:1-4.6(a)) (emphasis in original), with (Opinion [D.I. 183], Sept. 29, 2014, 15)("An inmate may then file an 'Administrative Appeal' of the '*response or finding received*' in accordance with "th[is] initial step of the Inmate Remedy System.) (quoting N.J.A.C. 10A:1-4.6(a)) (emphasis added).

"did not, for other reasons, comply with [the Camden County Correctional Facility's] grievance procedures." Id. at 273, 273 n.8. Likewise, the lack of a response from prison officials has not resulted in administrative remedies being deemed unavailable when the grievances "were addressed and filed to the wrong official or filed nine months past the deadline, in direct contravention of the grievance procedure in place at [the prison.]" Boynes v. Cty. of Lawrence, No. 15-139, 2017 WL 746807, at *4 (W.D. Pa. Feb. 27, 2017) (citing Small, 728 F.3d at 273) (emphasis in original).

The Court now addresses whether the inmate remedy system was available to Plaintiff in this case. In so considering, the Court first incorporates the findings of fact from our Opinion dated September 29, 2014. These findings are as follows:

a. **Inmate Remedy System, generally**

1. At all times relevant to this litigation, the New Jersey Department of Corrections maintained a generally standardized inmate remedy system and grievance procedure.[4] (See, e.g., Transcript of Proceedings Vol. 1 (hereinafter, "Tr. Vol. 1"), 47: 13-48:2.)
2. The inmate remedy system and grievance procedure provides the manner in which inmates present complaints to correctional facility staff.[5] (See Tr. Vol. 1 at 47:13-20, 51:16-22.)
3. The inmate remedy system generally proceeds in accordance with the five (5) part inmate remedy form on

---

[4] Defendants' exhibit two sets forth the operative sections of the New Jersey Administrative Code, which govern the inmate remedy system.

[5] Defendants' exhibits one and twelve through nineteen—which set forth identical inmate remedy forms for Bayside and East Jersey State Prison—further reflect the uniformity of the inmate remedy system across the New Jersey state prison system.

a single, one-page document, and the inmate handbook, to the extent available to individual inmates, advises inmates of the relevant process and procedures.[6] (<u>See</u> <u>id.</u> at 35:23-37:12, 101:6-102:14.)

4. Inmates may obtain the inmate remedy forms from various locations throughout the New Jersey state prisons and from a number of prison officials, including social workers and the ombudsman. (<u>See</u> <u>id.</u> at 95:18-22.)

5. The coordinator of the inmate remedy system reviews and processes inmate remedy forms. (<u>See</u> <u>id.</u> at 36:1-13, 99:12-16.)

6. In part one, the inmate sets forth the particular issue for which the inmate seeks redress and/or an administrative response. (<u>See</u> <u>id.</u> at 35:22-36:13, 97:4-5.)

7. The inmate must thereafter put the form, with part one completed, in the lockbox designated as a repository for the inmate remedy forms. (<u>See</u> <u>id.</u> at 97:14-98:2.)

8. The coordinator of the inmate remedy system (or a designee) retrieves the forms at regular intervals and then processes the form in one of two manners (one formal, the other informal). (<u>See</u> <u>id.</u> at 36:1-13, 99:12-16.)

9. The coordinator processing depends upon whether the coordinator deems the request compliant with the inmate remedy system. (<u>See</u> <u>id.</u> at 100:6-19, 123:10-129:10.)

10. In accordance with formal processing, the coordinator acknowledges receipt of the form in part two, and electronically logs the form's contents for tracking purposes. (<u>See</u> <u>id.</u> at 36:1-13, 99:12-16.)

11. The coordinator then designates the appropriate department for an investigation and/or response and routes the form accordingly. (<u>Id.</u> at 36:10-13.)

12. An inmate remedy form may also, in certain instances, be routed directly to an SID investigator, particularly in the event that the remedy form alleged a correctional

---

[6] Defendants' exhibits three and four set forth the inmate handbooks for South Woods State Prison and East Jersey State Prison. Plaintiff disputed the relevance of the introduced handbooks and the weight to be afforded such exhibits. (<u>Id.</u> at 200:19-201:10.) The Court admitted the exhibits over Plaintiff's objections. (<u>Id.</u> at 201:1-13.) The Court further notes that the testimony generally sets forth the salient portions of the inmate handbook. For the reasons set forth <u>infra</u>, the disposition of the exhaustion issue does not turn on the nature of the information set forth in the inmate handbook.

officer-initiated assault. (<u>Id.</u> at 163:1-16, 165:11-16, 169:16-170:6, 171:1-3.)

13. The receiving department reviews the request, conducts the requisite investigation, and responds in part three of the inmate remedy form. (<u>Id.</u> at 36:18-20, 111:8-14.)

14. The coordinator thereafter returns a copy of the form to the inmate. (<u>Id.</u> at 37:1-8, 111:17-19.)

15. Upon receipt of the inmate remedy form, the inmate may then appeal the department's response by resubmitting the inmate's remedy form with the appropriate indication in part four. (<u>Id.</u> at 37:1-8, 111:17-19.)

16. In the event an inmate files an appeal, the administrator reviews the information and either requires a supplemental response or deems the department's response adequate, at which time the administrator provides the requisite notation in part five. (<u>Id.</u> at 112:4-12.)

17. The administrator's completion of part five of the inmate remedy form constitutes the final agency decision in connection with the formal inmate remedy system. (<u>See id.</u> at 37:9-15, 115:8-24.)

18. Completion of part five of the inmate remedy form also renders the grievance procedures fully exhausted. (<u>See id.</u> at 37:9-15, 115:8-24.)

19. If the coordinator perceives a deficiency in the information set forth by the inmate in part one (for example, failing to articulate a question requiring a response) and/or the inmate's request exceeds the scope of the inmate remedy system (for example, setting forth information or requests with relevance to a disciplinary proceeding), the coordinator informally processes the form. (<u>See id.</u> at 100:6-19, 123:10-129:10.)

20. In such an instance, an inmate remedy form may be disregarded from the inmate remedy system. (<u>See id.</u> at 100:6-19, 123:10-129:10.)

21. In the alternative, a deficient form may be returned to the inmate with a corrective action form indicating the proper procedures relevant to the inmate's request.[7] (<u>See id.</u> at 100:6-19, 123:10-129:10.)

22. A form will not necessarily be deemed deficient solely because it requests a polygraph and/or refers to an SID investigation or related SID report. (<u>Compare id.</u> at 54:5-55:3, <u>with id.</u> at 125:15-127:25.)

_____

[7] The inmate remedy form specifically enables the inmate remedy system coordinator to return a remedy form to an inmate prior to completing part two by indicating that "[n]o action" had been taken, and appending a "DOC Corrective Action form[.]" (<u>See</u> D1.)

23. An inmate may also circumvent the inmate remedy system process by depositing the inmate remedy form in a box other than the lockbox designated for inmate remedy forms. (Id. at 77:5-81:2.)

24. In such an instance, and notwithstanding the absence of the coordinator's signature in part two, a department or prison official may provide a response, without the involvement and tracking of the inmate remedy system coordinator. (Id. at 77:5-81:2.)

b. **Plaintiff's Inmate Remedy Form**

25. Plaintiff signed an inmate remedy form dated August 15, 2007, and produced by Defendants in the course of discovery in this action.[8] (See Defendants' exhibit one (hereinafter, "D1") (bates-stamped "V.Jackson 88" by Defendants).)

26. Plaintiff's remedy form (handwritten in part and typed in part) states that officers assaulted him and that he sought a polygraph test in order to assess his veracity. (See D1.)

27. Plaintiff's inmate remedy form does not set forth any indication that the coordinator received his request. (See id.)

28. Plaintiff's inmate remedy form does not have any department response, Plaintiff-initiated appeal, or administrator review pursuant to the remaining parts of the inmate remedy system and remedy form.[9] (See id.)

29. On the date set forth on Plaintiff's remedy form, Plaintiff was confined in the detention unit at South Woods. (See Transcript of Proceedings Volume 2 (hereinafter, "Tr. Vol. 2"), 244:9-246:14.)

30. Plaintiff's confinement to his cell precluded him from depositing his inmate remedy form in the appropriate box absent guard supervision. (See id. 267:8-269:2.)

31. Plaintiff asked his social worker to deposit the inmate remedy form on his behalf, and thereafter reminded his

---

[8] As set forth supra, D1 sets forth Plaintiff's inmate request system and remedy form dated August 15, 2007. D1 further bears the bates-stamp "V. Jackson 88[.]"

[9] Defendants' exhibits twelve through nineteen set forth Plaintiff's inmate request system and remedy forms dated September 25, 2007, February 13, 2008, February 26, 2008, August 18, 2008, September 12, 2008, November 4, 2008, February 2, 2009, and April 6, 2009. These remedy forms originated during Plaintiff's detention in East Jersey State Prison and each form contains a staff response in part three.

social worker to deposit his remedy form. (<u>See id.</u> at 267:9-11, 267:23-268:1.)

32. South Woods received Plaintiff's form prior to Plaintiff's August 20, 2007 disciplinary proceeding.[10]

33. South Woods utilized the inmate remedy form in connection with the adjudication of Plaintiff's disciplinary charges.[11]

c. **Plaintiff's disciplinary hearing**

34. SCO Gandy filed a disciplinary charge against Plaintiff on July 10, 2007. (<u>See</u> Defendants' exhibit six at 1.)

35. Plaintiff also requested a polygraph examination in order to "prove" that Plaintiff did not assault the Defendant Correctional Officers. (Tr. Vol. 2 at 256:8-11, 257: 18-19; <u>see also</u> P1 (a request from the disciplinary hearing officer to Bayside State Prison for the polygraph examination of Plaintiff).)

36. The disciplinary hearing officer thereafter forwarded to the administration of Bayside Plaintiff's request for a polygraph examination dated August 15, 2007, together with a copy of Plaintiff's disciplinary charge and "related evidence[.]" (P1 (request for polygraph), P2 (request for polygraph).)

37. The Associate Administrator of Bayside denied Plaintiff's request for a polygraph examination, and directed that the disciplinary hearing process proceed "based on the merits of the testimony and evidence provided." (Plaintiff's exhibit four (hereinafter, "P4").)

---

[10] As set forth <u>infra</u>, Defendants' exhibit one (hereinafter, "D1"), Plaintiff's exhibits one and two (hereinafter, "P1" and "P2") have all been marked for identification in connection with Plaintiff's disciplinary hearing as "A19[.]" (<u>Compare</u> D1 (Plaintiff's inmate remedy form on which he requests, in part, a polygraph examination); P1 (Plaintiff's request for a polygraph examination for the purposes of his disciplinary hearing); P2 (same), <u>with</u> D6 (identifying "A19 POLYGRAPH request" as the correctional facility's confidential evidence in connection with the adjudication of Plaintiff's disciplinary charge).)

[11] Defendants' exhibit six (hereinafter, "D6") sets forth the nature of Plaintiff's disciplinary charge, the disciplinary hearing dates and/or postponements, the parties' evidence, witness lists, and a summary of the adjudication of Plaintiff's disciplinary charge.

38. Plaintiff's disciplinary hearing was postponed a number of times as a result of the need for witness statements,[12] preparation of the SID report, and/or Plaintiff's requests for a polygraph examination.[13] (<u>See</u> D6 at 1 (setting forth the various grounds for postponement of Plaintiff's disciplinary hearing date).)

39. On August 20, 2007, following the hearing, the disciplinary hearing officer found "substantial" evidence to conclude that Plaintiff violated *.002 (assaulting any person) by assaulting Defendant Officer Gandy. (D6 at 1, 4.)

40. In connection with the adjudication of Plaintiff's disciplinary charge, the correctional facility's file against Plaintiff included "A19 POLYGRAPH request" and "A21 POLYGRAPH denial[.]" (<u>See</u> <u>id.</u> at 2; <u>see</u> <u>also</u> D1 (Plaintiff's inmate remedy form dated August 15, 2007, bates-stamped "V.Jackson88" and identified as "A19"); P1 (Plaintiff's request for polygraph); P2 (Plaintiffs' request for polygraph).)

41. The "A19 POLYGRAPH request" is Plaintiff's inmate remedy form dated August 15, 2007.

42. The adjudication form concerning Plaintiff's disciplinary charge reflects that Plaintiff specifically stated that the Defendant Officers "punch[ed] and kick[ed]" him.[14] (D6 at 2.)

---

[12] Plaintiff's exhibit three sets forth the disciplinary hearing officer's request for additional information and/or evidence in anticipation of Plaintiff's disciplinary hearing.

[13] Plaintiff's exhibit five sets forth Plaintiff's July 12, 2007 request for a polygraph, a request witnessed by Kenneth Crotty. (<u>See</u> Tr. Vol. 2 at 256:17-19.) Plaintiff's exhibits one and two (hereinafter, "P1" and "P2") set forth Plaintiff's August 15, 2007 polygraph request. D1, P1, and P2—each dated August 15, 2007—have all been marked for identification in connection with Plaintiff's disciplinary hearing as "A19[.]" D6 identifies "A19" in the context of Plaintiff's disciplinary hearing as Plaintiff's request for polygraph. (<u>See</u> D6 at 2.) D1, P1, and P2 all reference Plaintiff's request for a polygraph examination. Plaintiff's exhibit four sets forth the Associate Administrator of Bayside's denial of Plaintiff's polygraph request.

[14] Plaintiff specifically provided the following statement in connection with his disciplinary hearing:

> Like I said in my report I was late taking my tray so Gandy trashed my room and took my tv. Next day he came in and while he was doing the count he got irate when I

43. The adjudication form further reflects that Plaintiff stated to his "counsel substitute" that "he didn't assault anybody" and that the Defendant Officers instead "assaulted him." (Id.)

d. **SID Investigation**

44. In addition to the administrative disciplinary hearing, SID's central office in Trenton conducted a contemporaneous investigation into Plaintiff's allegations of assault. (See Tr. Vol. 1 at 156:13-20, 159:2-15, 185:3-11; see also D6 at 1 (indicating the pendency of the SID investigation).)

45. A "specialized unit" in SID's central office in Trenton directly conducted the investigation. (Tr. Vol. 1 at 155:1-7, 161:22-162:25.)

46. In connection with the SID investigation, Kenneth Crotty (hereinafter, "Mr. Crotty"), an SID Senior Investigator, investigated Plaintiff's allegations of an assault by correction officers. (Id. at 156:1-159:18.)

47. Mr. Crotty also facilitated Plaintiff's request for a polygraph examination.[15] (Id.)

---

asked for my tv, and said I [f***ed] up. He called me out to the courtyard and said you want this tv and threw it on the ground and broke it. There were several witnesses, and I said I wanted a sergeant. [They came] in and said I'm bad and they are going to kick my ass and they will get away with it. I decided to not go to my cell and he hollered he would "kill you, n[...]". All I said was I wanted to see a sergeant. When he spit on me I slid in between the stairs and he started punching and kicking me and tried to drag me out and I kep[t] hollering I wanted a sergeant. Two other officers saw this and came over, and Gandy was trying to convince the other officers to get me. Another office Saduk started kicking me on the hand and the other one called in a code. They both started punching and kicking me and that's when the other officers came in. I gave SID witnesses and I think they were all moved here.

(Defendants' exhibit six at 2.)

[15] Plaintiff's exhibit six sets forth Plaintiff's request for a polygraph examination dated July 12, 2007 concerning "allegations of being assaulted[.]"

48. Mr. Crotty also authored a formal SID report, which he submitted to his "chief, Chuck Mueller." (<u>Id.</u> at 156: 22-24.)
49. SID did not, however, provide the results of this investigation to Plaintiff. (<u>See</u> <u>id.</u> at 185:11-25.)

The Court further makes the following findings of fact:

### e. <u>**Additional Findings on Plaintiff's Inmate Remedy Form**</u>

50. At the time Plaintiff submitted his inmate remedy form, Plaintiff was confined to his cell, and would be moved only by escort and with video recording. (<u>See</u> <u>id.</u> at 268:16-20.)

51. Plaintiff did not receive an inmate remedy system response to his allegations of assault and/or his request for a polygraph. (<u>See</u> <u>id.</u> at 268:2-16.)

In light of the record before the Court, the Court concludes that the actions of prison officials rendered Plaintiff's administrative remedies unavailable. The PLRA requires an inmate to exhaust "*available*" remedies. <u>Blake</u>, 136 S. Ct. at 1859 (emphasis added). Administrative remedies are not available, however, where prison officials "thwart" an inmate's efforts to utilize the grievance procedure. <u>Id.</u> at 1860. Specifically, where prison officials have failed to respond to a prisoner's complaint, and the "procedures did not contemplate an appeal from a non-decision" the administrative remedy is no longer available. <u>Small</u>, 728 F.3d at 273.[16] Here, the testimony clearly reflected that a

---

[16] As discussed above, failure of prison officials to respond to a grievance does not make a remedy unavailable if the inmate did not comply with the relevant grievance procedures. Here, however, Defendants have made no showing that Plaintiff's original

prison official may return an inmate remedy form without action or may entirely disregard an inmate remedy form where the prison administration deems the substance of the inmate remedy form inappropriate for review in the context of the inmate remedy system. Karen Balicki Phillips and James E. Dutch specifically testified concerning the manner in which prison officials may disregard an inmate's remedy form and also the manner in which prison administration likely processed Plaintiff's inmate remedy form. (See, e.g., Tr. Vol. 1 at 100:6-19, 123:10-129:10.) Mr. Dutch, for example, testified that certain inmates "circumvent[]" the system" by improperly depositing their inmate remedy forms in a location other than the repository designated for receipt of inmate remedy forms. (Id. at 78:1-81:3.) In such a scenario, and notwithstanding the substance of the inmate remedy form, Mr. Dutch asserted that the administration would deem the process invalid and reject the inmate remedy form, without notice to the inmate. (Id. at 79:23-80:24.)[17] Karen Balicki Phillips (hereinafter, "Ms.

_____

submission of his inmate remedy form failed to comply with the inmate remedy system procedures.

[17] Defendants have not demonstrated that Plaintiff's remedy form was placed in the wrong box and there is nothing in the record to support such a finding. See Boynes, 2017 WL 746807, at *4 (W.D. Pa. Feb. 27, 2017) (failure of prison officials to respond to complaints did not result in unavailability where complaints "were addressed and filed to the wrong official or filed nine months past the deadline, in direct contravention of the grievance procedure in place at [the prison.]") (citing Small, 728 F.3d at 273).

Balicki") similarly testified that certain inmate remedy forms may be "disregarded[.]" (Id. at 100:9-11.) Ms. Balicki then specifically concluded that Plaintiff's request for a polygraph examination constituted sufficient "justification" to "bounce[]" or to entirely disregard Plaintiff's inmate remedy form, and that Plaintiff's inmate remedy form facially reflected such treatment. (Id. at 125:15-127:25.) In light of this testimony, the Court cannot conclude that Plaintiff failed to exhaust available remedies. Rather, the testimony suggests that the prison administration's own processing of Plaintiff's inmate remedy form precluded his exhaustion of the inmate remedy system. Indeed, Defendants' production of Plaintiff's remedy form in connection with both the discovery in this litigation *and* Plaintiff's disciplinary proceeding, necessarily leads the Court to one inescapable conclusion: prison administration received Plaintiff's inmate remedy form, but never responded, nor returned the form to Plaintiff with a corresponding indication that Plaintiff must take certain additional steps in order to address his allegations. Inasmuch, Defendants have not demonstrated that the prison administration responded to Plaintiff's inmate remedy form pursuant to the inmate remedy system. Instead, at most prison officials responded to the polygraph portion of the inmate remedy form at issue by way of addressing the polygraph request during the disciplinary hearing process. (Compare D1 (Plaintiff's inmate

remedy form dated August 15, 2007, bates-stamped "V.Jackson88" and identified as "A19"), <u>with</u> D6 at 2 (identifying "A19 POLYGRAPH request" as the correctional facility's confidential evidence in connection with Plaintiff's disciplinary proceeding).) The inmate remedy system was not available to Plaintiff when prison officials' own affirmative actions have precluded him from invoking the relevant administrative remedies and, in fact, expressly foreclosed the availability of those remedies. <u>See</u> <u>Small</u>, 728 F.3d at 273 ("Because [the remedy process] did not contemplate an appeal from a non-decision, when Small failed to receive even a response ... to those grievances, the appeals process was unavailable to him."); <u>Robinson</u>, 831 F.3d at 154 (3d. Cir. 2016) ("SCI Rockview rendered its administrative remedies unavailable ... when it failed to timely (by its own procedural rules) respond to [Plaintiff's] grievance and then repeatedly ignored his follow-up request for a decision[.]"); <u>Romero</u>, 2016 WL 7424486, at *8 ("[I]f this Court were to find that Plaintiff [filed the grievances] ... [and] did not receive responses to those complaints, the Court could find that the [inmate remedy system] grievance process was not legally 'available' to Plaintiff[.]"); <u>Gadra-Lord v. Vuksta</u>, No. 15-540, 2017 WL 1652619, at *4 (M.D. Pa. Jan. 31, 2017), <u>report and recommendation adopted,</u> No. 15-540, 2017 WL 1541705 (M.D. Pa. Apr. 28, 2017) ("Likewise, '[w]here [the inmate] failed to receive even a response to the grievances ... much less a decision as to

those grievances, the [administrative remedy] process was unavailable to him.'") (quoting <u>Small</u>, 728 F.3d at 273); <u>Lugo-Vazquez v. Grondolsky</u>, No. 08-986, 2009 WL 2004392, at *3 (D.N.J. July 1, 2009) (noting that, "courts within and outside this Circuit have recognized that where the prison fails meaningfully to address the merits of an inmate's grievance, the remedy process may be found to be unavailable for PLRA purposes") (citations omitted); <u>Lewis v. Wash.</u>, 300 F.3d 829, 833 (7th Cir. 2002) (joining other circuits in concluding that prison officials' failure to respond to a prisoner's claim can render administrative remedies unavailable). Therefore, Defendant's affirmative defense of failure to exhaust is rejected.

Consequently, for the reasons set forth herein, and for good cause shown:

IT IS on this 1st day of August 2017,

**ORDERED** that Defendants' request to dismiss this action for failure to exhaust administrative remedies pursuant to the Prison Litigation Reform Act shall be, and hereby is, **DENIED.**


s/ Ann Marie Donio
ANN MARIE DONIO
UNITED STATES MAGISTRATE JUDGE